The City of Kansas to use of Coates v. Ridenour.

THE CITY OF KANSAS TO THE USE OF COATES, *Assignee,*
v. RIDENOUR *et al., Appellants.*

| 84 | 253 |
| 114 | 664 |
| 84 | 253 |
| 58a | 312 |
| 84 | 253 |
| 65a | 342 |
| 84 | 253 |
| 170 | 252 |
| 170 | 448 |

**Set-Off:** SPECIAL TAX-BILL. In an action on a special tax-bill, the defendant can set-off a debt due himself from the owner of the tax-bill.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

REVERSED.

*Karnes & Ess* for appellants.

The set-off should have been allowed. *Holbrook v. Receiver,* 6 Paige 227; *Green v. Farmer,* 4 Burr. 2220, 2221; Story's Eq. Juris., sec. 1437 *b; Field v. Oliver,* 43 Mo. 200; *Reppy v. Reppy,* 46 Mo. 571; *Barnes v. McMullins,* 78 Mo. 260; *Russell v. Conway,* 11 Cal. 95; *Simpson v. Hart,* 14 John. 62; *Smith v. Felton,* 43 N. Y. 419; *Ferris v. Burton,* 1 Ver. 439; *Thorpe v. Wegefaith,* 56 Pa. 82; *Burns v. Thornburgh,* 3 Watts 78; *Duncan v. Vandenburgh,* 1 Paige 622; *Camp v. Page,* 40 Ga. 45; *Herman v. Miller,* 14 Kan. 328; *Mitchell v. Oldfield,* 4 Term. R. 123; R. S. 1879, secs. 3867, 3875.

*Pratt, Brumback & Ferry* for respondent.

The set-off was properly disallowed. Cooley on Taxation, pp. 13 and 14; *St. Louis v. Allen,* 53 Mo. 44; *City of Louisiana v. Miller,* 66 Mo. 467; *Higgins v. Ausmuss,* 77 Mo. 353; *Pierce v. Boston,* 3 Met. 520; *McCracken v. Elder,* 34 Pa. 239; *Perry v. Washburn,* 20 Cal. 348; *Hunnelman v. Spanegal,* 39 Cal. 389; *Webster v. Seymour,* 8 Ver. 135; *Johnson v. Howard,* 41 Ver. 122; *Trenholme v. Charleston,* 3 S. C. 347; *Newport, etc., v. Douglass,* 12 Bush (Ky.) 673; *Cobb v. Elizabeth City,* 75 N. C. 1; *New Orleans v. Davidson,*

30 La. Ann. part 1, pp. 541, 554; 2 Dillon's Mun. Corp. (3 Ed.) sec. 810.

DeArmond, C.—The petition in this case contains six counts, each substantially the same. The suit is for the enforcement of six separate tax-bills against the property of the defendants. In the first two the amount claimed is $16.10 in each; in each of the last four, $27.60. In each of these counts it is alleged that the Mastin Bank was a corporation, created and organized under the laws of Missouri, and that on the third day of August, 1878, said bank made a voluntary assignment for the benefit of its creditors to Kersey Coates; that the City of Kansas is a municipal corporation; that by ordinance it established sewer district number one hundred and twenty-three, and ordered a sewer to be built therein; that for the doing of said work a contract was duly entered into with one John Halpin, and that he constructed said sewer in accordance with said ordinance and contract; that in accordance with the provisions of the city charter, tax-bills were issued against the property in said district to pay for the doing of said work; that the defendants, Ridenour and Baker, were the owners of six lots in said district, and that the several tax-bills sued on in said several counts were issued to said Halpin as charge against said lots so belonging to the defendants; that afterwards the said Halpin assigned said tax-bills to the said Mastin Bank, and that the same have not been paid, and judgment on each is asked. The defendants, in their answer, admit the issue of the tax-bills, and their assignment to the Mastin Bank, as alleged in the petition, and that the Mastin Bank made an assignment to Kersey Coates, in trust for all its creditors, and that they are the owners of the several lots against which said tax-bills are issued, and that they became indebted to the Mastin Bank in the amount of the several tax-bills. But for a defence thereto, say that on August 3, 1878, and for a long time

prior thereto, they were the owners of the several parcels of real estate sought to be charged in said tax-bills; that they were such owners on June 14, 1878, the date at which said bank acquired said tax-bills, and that on August 3, 1878, they had as partners on deposit in the Mastin Bank the sum of $194.30, and that the Mastin Bank, on that date, was indebted to them in said sum of $194.30 so deposited, and that said sum has not been paid to them, in whole or in part. They allege that on August 3, 1878, said bank was, and now is insolvent, and on said date made the assignment to said Coates, as above mentioned. They allege that the property upon which these tax-bills are charged belonged to the defendants as partners. They ask that of the sum so deposited an amount equal to said tax-bills be set-off against the same, and that said tax-bills be cancelled. The petition was filed May 8, 1880, and the answer was filed October 11, 1880.

Afterwards, on June 16, 1881, this agreed statement of facts was filed: "This is a suit to enforce certain tax-bills for building a sewer in Kansas City, Missouri, and the validity of the tax-bills is admitted, and also that the defendants are the owners of the lots sought to be charged, and were such on August 3, 1878. It is likewise admitted that the defendants had a deposit, as claimed in the answer, in the Mastin Bank at the time of its failure, and the only question to be determined is, whether or not the defendants, as a matter of law, are entitled to the set-off, as claimed. The ownership of Coates, as assignee of the Mastin Bank, of the tax-bills as sued on, is admitted, and that said bank, on August 3, 1878, was unable to pay what it then owed.

"PRATT, BRUMBACK & FERRY,

"Attorneys for Plaintiff.

"KARNES & ESS,

"Defendants' Attorneys."

On these pleadings and this agreed statement of facts the case was submitted to the court without a jury, and

against the objections of the defendant, the court declared the law to be for the plaintiff, as follows:

"On the pleadings and the agreed statement of facts, the court must find that the sum due defendants from the Mastin Bank cannot be set-off against the sum due on the special taxes or tax-bills sued on."

The defendants asked the court to declare the law as follows, which was refused:

"The defendants ask the court to declare the law to be that upon the pleadings and agreed statement of facts, as filed in the cause, the plaintiff cannot recover."

The court found defendants not entitled to set-off their demand against the plaintiff's and that there was due plaintiff from defendants the several sums sued for, and interest, and gave judgment against defendants for said amounts, with costs, to be levied of the several lots against which the tax-bills issued. After the assignment of the Mastin Bank to Kersey Coates, and on January 30, 1879, one of the days named by him for the allowance of claims, the said defendants, Ridenour and Baker, presented to him for allowance an account against said bank for $194.30, money deposited, and out of this they asked that the tax-bills sued on be deducted, and that the balance be allowed them. This the said assignee refused, and from the decision of the assignee the defendants appealed to the circuit court of Jackson county, and upon hearing in said circuit court, the judgment of the assignee was affirmed, and the whole amount of $194.30 allowed against said assignee, but the court refused to deduct therefrom the amount of said tax-bills. Afterwards, on January 20, 1882, the defendants in this cause filed a motion asking that the judgment on said tax-bills be set-off against the judgment of allowance as aforesaid. Upon the hearing of this motion it was agreed that the defendants were the owners of the real estate since January, 1875, and still were. The court denied the motion. The necessary steps being taken, the cause is here by appeal.

The law, as applicable in general to the case of the assignee of an insolvent bank, suing a depositor, who asks to set-off what is owing to him as a depositor against what he owes, is declared and the authorities examined in *Smith, Assignee, v. Spengler*, 83 Mo. 408. The conclusion reached is, that on reason and authority, the set-off should be allowed.   One feature distinguishes the case at bar from that just referred to; there, a promissory note was sued on; here, certain special tax-bills.   So, *Smith v. Spengler*, though a strong authority in point, is not necessarily decisive of this case.   The law authorizing the issue of these tax-bills (Laws 1875, p. 256-7) provides, among other things, that:  "As soon as the district sewer shall have been completed, the city engineer or other officer having charge of the work, shall compute the whole cost thereof, and shall assess it as a special tax against the lots of ground, exclusive of the improvements, in proportion to the area of the whole district, exclusive of public highways; and such officer shall make out a certified bill of such assessment against each lot of ground within the district, in the name of the owner thereof; said certified bill shall be delivered to the contractor for the work, who shall proceed to collect the same by the ordinary process of law, in the name of the city, to his own use; and in case of absent owners, he may sue by attachment or by any other process known to the law, and every such certified bill shall be a lien against the lot of ground described therein, and shall bear interest at the rate of ten per cent. per annum from thirty days after the date of its issue, unless sooner offered to be paid; and if not paid or offered to be paid within six months after the date of issue, then it shall bear interest at the rate of fifteen per cent. per annum until paid;  *  *  *  and every such certified bill shall, on action brought to recover the amount thereof, be *prima facie* evidence of the validity of the charges against the property therein described,

and of the liability of the person therein named as the owner of such property. The city shall incur no liability for building district sewers, except when the city is the owner of a lot of ground within the district, and in that case the city shall be liable for the cost of said sewer, in the same manner as other property owners within the district."

It may be regarded as settled that no set-off can be allowed in a suit for taxes for general or public purposes, though in some cases there is recognized a limitation to the rule, as shown in *Donelson v. Inhabitants of Colerain*, 4 Met. 430; *Concord v. Pillsbury*, 33 N. H. 310. Public policy forbids the plea; the regular flow of the public revenues into the public treasury must not be interrupted. And the taxes are not considered as debts, or arising out of any contract, or dependent upon the consent of the individual citizen. Cooley on Taxation, p. 13. Special assessments by municipalities, such as these tax-bills sprang from, are upheld on the theory that the property against which the charge is made is so enhanced in value, and its owner so specially benefited by the improvement, that the assessment is not really a burden, whilst the public may be expected to derive enough advantage from the enterprise to justify its servants in ordering and directing it. The distinction between general and special taxes is clearly noted in *Neenan v. Smith*, 50 Mo. 525. Bliss, J., delivering the opinion of the court, says: "There is a broad distinction, and one of universal recognition, between the foundation upon which is based the right of general taxation for governmental purposes and that which supports the rights of local assessments. The authority to impose either is referred to the taxing power; but the object of one, as giving the authority, widely differs from that of the other. All taxation is supposed to be for the benefit of the person taxed. That for raising a general revenue is imposed primarily for his protection as a member of society, both in his person and his prop-

erty in general, and hence the amount assessed is against him, to be charged upon his property, and may be collected of him personally. But, on the other hand, local taxes for local improvements are merely assessments upon the property benefited by such improvements, and to pay for the benefits which they are supposed to confer; the lots are increased in value, or better adapted to the uses of town lots, by the improvement. Upon no other ground will such partial taxation for a moment stand." *Egyptian Levee Co. v. Hardin*, 27 Mo. 495; *Emery v. San Francisco Gas Co.*, 28 Cal. 345.

In *Sheehan v. Good Samaritan Hospital*, 50 Mo. 155, and in other well considered cases in this and other states, it is decided that property "exempted from taxation of every kind" is still liable for assessments for local improvements. In the case just cited the court say: "the tax-bill here sued on is not regarded as a tax, but as an assessment for improvements, and is not considered as a burden but as an equivalent or compensation for the enhanced value which the property derives from the improvement." Is this a distinction without a difference? Some authorities without giving reasons, in effect, so hold. Dillon (Mun. Corp., sec. 810) says: "The assessment is a tax levied by the corporation upon property to defray the expense of the improvement, and the suit to collect it (though brought by the contractor under authority given for that purpose) is not the subject of set-off or counter-claim." Of the cases cited to support the doctrine announced in the section from which this quotation is made, but one, *Himmelman v. Spanagel*, 39 Cal. 389, bears on the question of set-off. That was a suit "to recover an assessment for grading a street," and the question to be determined was "whether they (defendants) are entitled to set up, by way of counter-claim, the damages occasioned by the plaintiff and his assignors, by their having deposited on the premises and an adjacent street a large quantity of earth

while they were employed in grading the street." The court decided the question in the negative ; and the learned judge who delivered the opinion, after giving the reasons why the alleged damages could not be set up, as defendants claimed, added: "A further, and we think, a conclusive answer to the defendants' position, is, that the demand on which the action was brought, constitutes, according to the authority of the cases above cited, a tax, a municipal tax, levied by the corporation upon certain property to defray the expenses of the improvement of a street adjacent to the property. The origin, obligatory force and whole nature of a tax is such that it is impossible to conceive of a demand that might be set-off against it, unless expressly so authorized by statute."

In many cases it has been decided that a set-off cannot be allowed in a suit by a municipality for the collection of a tax for general purposes or one appropriated to a particular use. In *Pierce v. City of Boston*, 3 Metcalf 520, the city was sued for the wages due a school teacher, and asked to set-off against the demand city taxes owing by plaintiff. The right of set-off was denied, the court saying that taxes do not arise from any contract, "do not partake of the nature of judgments;" "for the collection of them no right of action is given;" "nor can they be turned into judgments." *Johnson v. Howard*, 41 Vermont 122, announces the same doctrine supported by the same line of argument. May it be inferred from these two decisions that if in Massachusetts and Vermont a tax could be "turned into a judgment" it might be pleaded as, or met by, a set-off? Judge Dillon in section 810, *supra*, says, immediately following the passage within transcribed: "But although the property owners are not privies or parties to such contracts, yet, to a certain extent and in a substantial sense, the municipality is their agent." When, as in this case, the municipality cannot become liable to the contractor, who, from the first, must look alone to the

lot owner and the lot for his pay, the municipality may, I think, be regarded as the agent of the lot owner, "in a substantial sense." If the municipality is, in any sense, an agent in the transaction, the lot owner must, in some sense, be a principal. When sued on a special tax-bill, he may attack the contract, set-off against his liability damages from its negligent or imperfect performance, or entirely defeat a recovery by overthrowing the theory of benefits conferred. *Creamer v. Bates*, 49 Mo. 523; *Corrigan v. Gage*, 68 Mo. 541; *Halpin v. Campbell*, 71 Mo. 493.

The lien of a special tax-bill has been treated by this court as being akin to the lien of a mortgage. *Olmstead v. Tarsney*, 69 Mo. 396; *Corrigan v. Bell*, 73 Mo. 53; *Keating v. Craig*, 73 Mo. 507. In *Vance v. Corrigan*, 78 Mo. 94, the chief object, it is said, of bringing the land owner into court is "to enable him to contest the validity of the proceedings as a charge upon his property, and to discharge the lien, if he so desires, without sale thereof." Our statute of set-off is very comprehensive. Section 3867, Revised Statutes, provides that: "If any two or more persons are mutually indebted in any manner whatsoever, and one of them commence an action against the other, one debt may be set-off against the other, although such debts are of a different nature." But, it is insisted that there is no mutual indebtedness here, not only because a tax is not a debt, but also because no personal judgment can be rendered against defendants. The tax-bill is made *prima facie* evidence of the defendant's liability as lot owners, the petition charges that they are so liable, the answer admits it, and in the judgment it is so found. If the judgment were general instead of special defendants would not be more certainly, or less certainly, indebted than now, but in the one case, if they could not or would not pay, they might designate the property to be sold to satisfy the execution (R. S., sec. 2365), but in the other they have no such privilege, the property to be sold being specified

in the judgment and execution. In this fact I find a reason for, instead of against, the claim to a right of set-off in this case.

Another sweeping provision for the allowance of set-offs is section 3870, Revised Statutes. In all actions at law or other legal proceedings by any city against any person for the enforcement, collection or recovery of any *debt, demand, claim* or *pecunia-*, *liability*, such person may set-off a debt, claim or demand due him from the city. In *Howell v. City of Buffalo*, 15 N. Y. 523, Denio, C. J., says this in definition of two of the terms employed in this statute: "'Demands or claims' are the largest words of that class, and clearly embrace a cause of action founded upon a trespass to personal property. Littleton says that the most beneficial release which a man can have is a release from all demands (sec. 508); and Lord Coke declares that a release of all claims extends to all demands (Co. Litt. 291, *b*)." If it be urged that the city is not the real party in interest, and for that reason section 3870 can have no application, we may wonder what principle of law or equity or what consideration of public policy requires that the contractor's insolvent assignee should, in such cases as this, have a tighter grip on the defendant and his property than the city itself could have, if, by law, the city could be, and in fact were, the real plaintiff. Here, by the law, without which no contract could be made, the contractor must look exclusively to the individual lot owners and their several lots for the satisfaction of his demands, and must depend upon "the ordinary process of law" for the enforcement of his rights. When the improvement has been completed, the assessment made, and the special tax-bills delivered, the connection of the public with the transaction has ended. And when the owner of the tax-bill and the owner of the lot against which the assessment was made thereafter meet in court, they are on equal footing. The demand of the one ought not to be treated as a sacred thing, nor that of the other as blighted

in the contract. The policy of our laws, as lettered in the statutes and interpreted by this court, is, I think, to preserve, as a thing of substance and of importance, the distinction between general taxes and local, or special, assessments. There is public policy in the conservation of individual rights, and in the enforcement of individual equality before the law. The doctrine that denies to the individual the right of set-off in suits for taxes finds no application in this case. Not in the formula, but in the reason of a rule is its binding force.

That the set-off should have been allowed is settled by *Smith v. Spengler*, *supra*, unless the law of that case is not authority in this, because this is a suit on special tax-bills, that a suit on a note. I think that this case is within the reason of the rules and principles that there govern, and that the court below erred in giving and refusing declarations of law and in its judgment. I think, too, that the court committed error in refusing to set-off defendants' judgment of allowance against plaintiff's judgment on the tax-bills.

The judgment should be reversed and the cause remanded, with direction to enter judgment in accordance herewith. All concur.