## MOUND CITY LAND AND STOCK COMPANY et al. v. MILLER et al.; DAVIS, Appellant.

### Division One, November 26, 1902.

1. **Incorporation:** DRAINAGE DISTRICT: REVIEWING FACTS. The appellate court will not review questions of fact, unless the evidence is preserved in a bill of exceptions, nor even then if the evidence is conflicting.

2. **Drainage Act:** CONSTITUTIONAL. The laws of this State authorizing the organization and incorporation of a drainage district by a majority of the resident owners of a continuous body of swamp and overflowed lands, embracing in excess of 640 acres, are in this case assailed as being unconstitutional, in that, they authorize the formation of a private corporation for the purpose of improving private property and force private individuals to become members of such corporation against their will, and assess a tax against their property in the district that is benefited by such drainage; and in that, they discriminate between resident and non-resident owners; and in that, they create an unreasonable burden upon the objectors' land, without any corresponding benefits; and in that, they subject the land to the burdens and taxation without providing a right of trial by jury. *Held,* that the act is not unconstitutional for any of these reasons.

3. ———: DRAINAGE DISTRICTS ARE PUBLIC CORPORATIONS. The State is directly interested in said laws, first, because by keeping out the water the health of the inhabitants is conserved, and, second, because, by keeping out the water the value of the lands is increased and the revenues of the State thereby enhanced. Such districts when organized as provided by the Drainage Act have all the ele-

Land & Stock Co. v. Miller.

ments of corporations formed to accomplish a public use and purpose.

4. ———: ———: SIMILAR TO SEWER LAWS. Drainage laws are closely akin to sewer laws in the legal principles applicable to the two, for what are called sewers in the city are called drains in the rural communities, and if the laws permitting the establishment of a sewer district, and the charging of private property with the benefits it has received from the sewer, are constitutional, so are those permitting the establishment of drainage districts, and for the same reasons.

5. ———: ———: GOVERNMENTAL AGENCY: PUBLIC CORPORATIONS. The constitutionality of the law is not affected by the fact that the people themselves are permitted to organize into a drainage district and that organization, instead of commissioners or the courts, is charged with carrying the laws into effect. The State is competent to raise up a new governmental agency for the enforcement of its police powers, and for the purpose of enhancing its revenues. The State itself can establish drains, where there is a public necessity for them, and assess the cost of the benefits on the owners of the land benefited, and whatever police powers the State itself may perform it can delegate to a specific body to perform. The corporations, called "drainage districts," organized under the drainage laws of Missouri, are public, governmental corporations, and in no sense private corporations.

6. ———: ———: UNWILLING OBJECTORS: CONSENT: ASSESSMENT'S VALIDITY. The constitutionality of the drainage laws is in no sense affected by the fact that some unwilling citizens are drawn into the drainage-district corporations organized thereunder, and are made to pay for the benefits assessed against their lands, against their will. Nor does it make any difference whether the objector is made a member of the company or not. He can be held liable for his share of the assessments with or without his consent.

7. ———: ———: TRIAL BY JURY. The right of trial by jury as guaranteed by the Constitution is not impaired by the laws organizing swamp or overflowed lands into drainage districts. No right of trial by jury existed in such cases before the adoption of the Constitution.

8. ———: ———: ONE VOTE FOR EACH ACRE. The fact that each owner of the drainage district is entitled to one vote for each acre of land owned by him, does not affect the validity of the law. It is similar to the right of the stockholders of a corporation to one vote for each share of stock.

Vol 170 mo—16.

Appeal from Holt Circuit Court.—*Hon. Gallatin Craig*, Judge.

AFFIRMED.

*S. F. O'Fallon* and *C. A. Anthony* for appellant.

(1) The badges of private corporations are: (a) Formed by voluntary association, the court may exclude some lands, but the limits are fixed by the signers of the articles; no inquiry as to practicability; (b) Corporators, shareholders, property, votes, not men; (c) Limited as to time, public corporations perpetual; (d) Divested of all state and county supervision, not a political subdivision of the State. The county court the proper guardian of county affairs; no control here; (e) By forming little independent districts would lead to endless conflict. Drainage of "contiguous borders of overflowed lands and levee districts should be left with counties having control of whole territory; (f) Twenty small holders can not form a drainage corporation if three large holders have the majority of land, but the three might force the twenty. Rights should be the same to all, large or small owners. (2) Has the General Assembly, under the Constitution of 1875, power to create corporations of this class? County of Livingston v. Darlington, 101 U. S. 411. The words, "or other municipal corporations," under the good rule of *ejusdem generis*, must be limited to the classes enumerated, and can not mean "drainage districts." St. Louis v. Laughlin, 49 Mo. 559; State v. Schudman, 133 Mo. 111. The maxim, *"expressio unius,"* excludes "drainage districts," and applies "as well to constitutions as it does to statutes." Bank v. Graham, 147 Mo. 257; State ex rel. v. Seibert, 123 Mo. 435. Our Constitution, article 2, section 20, treats "drains and ditches across the lands of others for agricultural and sanitary purposes" of like character as "private ways of necessity," the only exceptions where private prop-

erty may be taken for private use, "with or without compensation." Can the Legislature avoid this provision of section 20, article 2, by creating drainage districts and calling them public corporations? This construction in no manner conflicts with Morrison's case, 146 Mo. 543, where "the levee district is constituted by the county court laying out the district." Here A. et al. "form a drainage district," sign articles of association, go into the circuit court to compel E. and others to join them. Where the county court has jurisdiction to form drainage districts there is no warrant for individuals doing same.

*Henry T. Alkire* and *John Kennish* for respondents.

(1) The power of the Legislature to enact this statute can not be questioned, unless the statute is in violation of some provision of the Missouri Constitution or the Federal Constitution. Ex parte Roberts, 166 Mo. 212; Heman v. Allen, 137 Mo. 544; State v. Bixman, 162 Mo. 21; Railroad v. Smith, 62 Ill. 273; County of Livingston v. Darlington, 101 U. S. 407; 25 L. Ed. 1015. (2) The drainage district is a public, not a private, corporation. Morrison v. Morey, 146 Mo. 543; Harward v. St. Clair Drainage Co., 51 Ill. 130. (3) No provision of either the Constitution of Missouri or the Constitution of the United States is violated by the statute. Kansas City v. Ward, 134 Mo. 172; Hagar v. Reclamation District, 111 U. S. 701; Rutherford v. Maynes, 97 Pa. St. 78; Turlock Irrigation Dist. v. Williams, 76 Cal. 360; Garrett v. St. Louis, 25 Mo. 514; St. Louis v. Rankin, 96 Mo. 505; Spencer v. Merchant, 125 U. S. 355; Daily v. Swope, 47 Miss. 367; Emery v. San Francisco Gas Co., 28 Cal. 346. (4) The constitutional provision as to maximum rate of taxation is not violated. Morrison v. Morey, supra; Kansas City v. Bacon, 147 Mo. 259. (5) The title of the act, both that of the original and that of the amended act, is within the constitutional requirement

and valid.   State ex rel. v. Ransom, 73 Mo. 88; State
v. Bennett, 102 Mo. 361; State ex rel. v. Jackson Co.
Court, 102 Mo. 537; State v. Bockstruck, 136 Mo. 352;
State v. Whitaker, 160 Mo. 70; State ex rel. v. Fire-
men's Fund, 152 Mo. 45.   (6)   The formation and
powers of such corporations as the one in question
have been uniformly sustained by this court.   Egyp-
tian Levee Co. v. Hardin, 27 Mo. 495; Morrison v.
Morey, supra.   The Egyptian Levee Company case
is followed in:   St. Joseph v. Anthony, 30 Mo. 537, a
street paving case; St. Joseph v. O'Donoghue, 31 Mo.
345, same; St. Louis v. Oeters, 36 Mo. 456, a sewer
case; St. Louis v. Clemens, 36 Mo. 467, a street im-
provement case; Columbia Bottom Levee Co. v. Meier,
39 Mo. 53, a case of reclaiming overflowed lands; Farrar
v. St. Louis, 80 Mo. 379, a street paving case; Kansas
City v. Ridenour, 84 Mo. 253, a sewer case; St. Louis
v. Ranken, 96 Mo. 497, a street widening case; Inde-
pendence v. Gates, 110 Mo. 374, a street grading case;
St. Joseph v. Owen, 110 Mo. 445, a sewer case; Morri-
son v. Morey, 146 Mo. 543, a levee district case.   The
distinction drawn by the court in State ex rel. v. Lef-
fingwell, 54 Mo. 458, 474, emphasizes the principle
upon which the constitutionality of the Drainage Act
rests.   Kansas City v. Ward, 134 Mo. 178.

MARSHALL, J.—This is a proceeding, under
sections 6517 et seq., Revised Statutes, 1889 (being
now secs. 8251 et seq., R. S. 1899), to have incorporated
"Squaw Creek Drainage District No. 1," in Holt
county.   The proceeding was instituted in the circuit
court of Holt county, on July 2, 1899, by the filing of
articles of association and a petition for incorpora-
tion, by a majority of the resident owners of a con-
tiguous body of swamp and overflowed lands, em-
bracing an area in excess of six hundred and forty
acres, to-wit, of about twenty-three thousand acres.
The petition conforms to the requirement of the statute
in respect to what shall be stated, and is signed by the
majority of the resident owners.   Proper notice was
given, and on February 22, 1900, the defendants filed

an answer specifying sixteen principal objections, and five sub-objections to the incorporation of the drainage district. But of these, nine raised questions of fact, which were found against the defendants, by the trial court, and are not open to review here, for the reason that no evidence is preserved by this record, and the bill of exceptions only states that there was evidence pro and con, and also because this court will not review the findings of fact by the trial court where the evidence is conflicting.

The other seven objections raise questions of law, and are as follows:

"1.   The proposed incorporation or organization is not warranted by the statute and is in violation of the Constitution of the State of Missouri.

"2.   It is an attempt to delegate the police power that should be enforced by the proper officers and tribunals of the State, to private individuals.

"3.   The statute under which the petitioners propose to incorporate makes a discrimination between 'resident owners' and non-resident owners of 'swamp or overflowed lands' situate in the State of Missouri, and thereby violates the Constitution of the United States.

"4   The court had no jurisdiction of the subject matter.

"5.   By this class of so called 'corporations' there is not only an attempt to take objector's property against his will, but a violation of personal rights in attempting to make him a member of the 'corporation' against his will.

"10.   The power of assessment and taxation that the so-called corporation or organization sought to be given the organizers or corporations would, if exercised, create an unreasonable burden upon objector's lands.

"16.   Said drainage district should not be organized as asked and made a corporation for the following reasons:

"a.   There is no public necessity therefor.

"b. The corporation would entail burden on your objectors and others like situated without corresponding benefit.

"c. The said drainage district is in fact a private corporation, when organized under this plan, and your objectors should not be made members thereof against their wills.

"d. The drainage district proposed would be neither a public corporation nor of public utility, and these articles as proposed are defective in not stating a place or location of its business office.

"e. The proposed incorporation or organization attempts to subject the property and lands of your objectors to burden and taxation without providing a right of a jury trial."

The case was tried by the circuit court of Holt county and the following finding and judgment entered by that court:

"And the court now here being further and fully advised in the premises finds that said petition and articles of association were duly signed and filed in the office of the clerk of this court on June 29, A. D. 1899, and that a summons was duly issued thereon to each and every and all of the resident defendant land owners who did not waive service of such summons, and that service was duly had on each, every and all of said defendants not so waiving same, as is fully shown by the return of service by the sheriff of this county, herein filed, more than thirty days before the first day of the January term, A. D. 1900, of this court, and that such other resident defendants and landowners interested duly waived the issue and services of such summons and entered their appearance herein, as will fully appear in their said several written waivers duly signed and filed herein, and that all non-resident defendants and landowners not served with summons or waiving the same have been duly and legally notified of the pendency of this proceeding by publication as provided by law.

"And the court also now being further informed

and advised in the premises finds from the evidence adduced, that the said petition and articles of association so filed herein were and are duly signed by a majority in interest of the resident owners, of the contiguous body of· swamp and overflowed lands, described in said petition and articles of association, situate, lying and being wholly in Holt county, Missouri, and that said lands constitute an area exceeding six hundred and forty acres in extent, to-wit, about twenty-three thousand acres in all, which is and was sought to be incorporated and formed into such drainage district, for the purpose of having such said lands reclaimed and protected from the effects of water by such drainage or otherwise.

"And the court further finds that for the purpose of organizing and incorporating such drainage district the said petitioners, a majority of the resident landowners of such body of swamp and overflowed lands in said county, have signed articles of association in which the name of said district is stated to be 'Squaw Creek Drainage District No. 1,' and that the number of years that the same is to continue is fifty years, and that the limits of the same, and the names and places of residence of the owners of lands in said district, owned by those proposing to organize the same and join the said organization of said district and the names, of all owners of land in said district and the description of lands owned by each, who are, or will be benefited by such organization, but who refuse to join in such organization and incorporation.

"And the court further finds, that by the terms of said articles of association, the said owners ·of real estate, so forming the said drainage district for said drainage ·purpose, are willing to and have obligated themselves to pay the tax or taxes that may be assessed to pay the expenses of said organization and to make the improvements that may be necessary to effect the drainage of said lands so here proposed to be formed into said drainage district; and which said.

articles of association are as follows:   [Setting them out in full.]

"Wherefore, the premises considered, the court doth now here order, adjudge and decree that the said drainage district be and the same is hereby formed, created, organized and incorporated, in accordance with said articles of incorporation, so signed by the said petitioners, and filed herein, as drainage district with the boundaries as hereinbefore set out and described; said district to include all the lands in said boundaries described except such as have been by said petitioners excepted and the finding of the court herein on objections duly filed not to be benefited by such proposed ditch, drains, dykes or other improvements sought to be effected, as hereinbefore set out and described and referred to in the court's findings that the lands so excepted and excluded shall in no form or manner be assessed with any taxes or benefits for the drainage or improvements to be made hereafter by said organization of the lands included in such drainage district, nor shall the lands so excepted and excluded or the owners thereof be entitled to any right or interest in and to the ditches, dykes, drains or other improvements of or made by the petitioners or incorporators of the said drainage district.

"That the said drainage district shall be created and incorporated in and by the name of 'Squaw Creek Drainage District Number One,' under which name it shall and may sue or be sued, plead and be impleaded in all courts of law or otherwise of this State.   That such drainage district and incorporation shall be and continue as such under said name for the period of twenty years and shall possess and exercise all the rights and powers and authority given and conferred by and under the laws as provided under sections 6517 to 6530 and both inclusive of article three in chapter ninety-seven of the Revised Statutes of Missouri of 1889, and amendments thereto by the General Assembly of Missouri of 1895, and as now embodied in the Revised Statutes of Missouri of 1899.

"It is further ordered, adjudged and decreed by the court, that the said drainage district as now formed, created and incorporated shall consist of, comprise and embrace therein only such of the lands scheduled in said articles of association and petition for incorporation as may be contained in the following list and schedule to-wit:"

[Here follows the list and schedule of lands contained in drainage district among which is the following: "80-10-60-39-w ½ of ne ¼, James P. Davis, Napier, Missouri."]

The defendant James P. Davis after proper steps appealed to this court.

## I.

The first question presented for adjudication in this case is the constitutionality of the drainage laws of this State.

The first drainage law in this State was the Act of April 21, 1877 (Laws 1877, p. 285). The plan of that act was that upon petition of the owners of a majority interest of the lands to be drained, the county court appointed commissioners, who managed the work. The cost was apportioned between the public at large and the individuals whose land was specially benefited, and special assessments were levied accordingly.

Then in 1879 an act was passed (Laws 1879, p. 132), which is the origin and basis of the present law, but it was expressly provided that it should not be construed to alter, amend or repeal the act of 1877, above referred to. This act contained twenty sections. The scheme of the act was to authorize the formation of drainage districts, to consist of not less than six hundred and forty acres each, by the people of the district, and to authorize the people of such districts to manage the business. It permitted the organization of such a drainage district by the majority in interest of the resident owners of swamp and overflowed lands

signing articles of association, submitting them to the circuit court, with a petition praying for a decree creating such district. It also provided for notice to all persons in the proposed district who did not join in the petition, and for a trial by the circuit court of the propriety and necessity of such a district, and for fixing the boundaries of the district, and for excluding all the land in the district that would not be benefited by such drainage. It provided for the election, by the people, of a board of supervisors to manage the business; the procurement, by condemnation if necessary, of a right of way for ditches, drains and dykes; for levying an assessment, not exceeding fifty cents per acre per year for benefits, to pay the expenses of surveys, building drains, ditches, dykes, etc., and the appointment by the county court of a drain commissioner, whose duty it was to survey, locate, mark out, estimate the cost of, and contract for the construction of all such drains, ditches, dykes, etc.

This act passed into the revision of 1889, and became sections 6517 et seq. In 1895 the Legislature amended three sections of the law and added a new section, and the law as thus amended passed into the revision of 1899 and became sections 8251 et seq., Revised Statutes 1899, and this proceeding is governed by the law as it was thus enacted and perfected.

Boiled down, the objections to this law may be said to be, that it is unconstitutional because it authorizes the formation of a private corporation for the purpose of improving private property, and forces private individuals to become members of such corporation against their will, and assesses a tax against their property for the improvement of all the property in the district that is benefited by such drainage; that it discriminates between resident and non-resident owners; that it creates an unreasonable burden upon the objectors' lands, without any corresponding benefit; and that it subjects the land to burden and taxation without providing a right of trial by jury.

Section 20 of article 2 of the Constitution is also

said to be violated by this law.  That section is as follows:  ''That no private property can be taken for a private use, with or without compensation, unless by consent of the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes, in such manner as may be prescribed by law; and that whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public.''

It is only necessary to say of this last contention that this section does not apply to such a case as this. [Heman v. Schulte, 166 Mo. 409.]

The levee laws of this State were opposed upon many of the grounds relied upon herein against the drainage laws, but the constitutionality of the former was sustained by this court in Egyptian Levee Co. v. Hardin, 27 Mo. 495; Columbia Bottom Levee Co. v. Meier, 39 Mo. 53.; Morrison v. Morey, 146 Mo. 543; and State ex rel. v. Wall, 153 Mo. 1. c. 220.

Irrigation laws have been attacked upon much the same grounds, but their constitutionality has been upheld.  [Turlock Irr. District v. Williams, 76 Cal. 360.]

Levees keep out the water.  Irrigation canals bring in the water.  Drains take out the water.  The public has an interest in each kind of such laws.  By keeping out the water, the health of the inhabitants is conserved and the value of the lands increased, and the revenues of the State enhanced.  Thus the State is directly interested both for sanitary and financial reasons.

The irrigation laws bring in the water and make valuable the arid lands, and thereby enhance their value, and, hence, bring in more revenue to the State. Thus the State has a direct pecuniary interest, although not a sanitary interest.

The principles underlying the cases upholding the validity and constitutionality of levee and irrigation

laws apply with even greater force to drainage laws. For, from a sanitary point of view, the dangers to health arising from overflows occasioned by floods are intermittent, while the dangers to health arising from marshes and stagnant pools of water are continuous and ever present. There is certainly as much, if not greater, reason and necessity for drainage laws as there is for levee and irrigation laws. Drainage laws are closely akin to sewer laws. In fact, the only difference between the two is that they are called sewers in cities and closely populated communities, while they are called drains in rural and agricultural communities, and the further difference that sewers are generally covered over to prevent the escape and dissemination of foul odors and noxious gases, and conceal the passage of their contents through the streets, while drains are open. There is, however, no difference in the legal principles applicable to the two. If one is constitutional, so is the other. If private property that is benefited by a sewer can be charged for the benefits it receives against the wishes of the owner, so also can the agricultural lands be charged for the benefits conferred upon them. The constitutionality and validity of sewer laws has been uniformly upheld. [St. Louis v. Oeters, 36 Mo. 456; Kansas City v. Ridenour, 84 Mo. 253; St. Joseph v. Owen, 110 Mo. 445; Heman v. Allen, 156 Mo. 534; Heman v. Schulte, 166 Mo. 409.]

So likewise the validity and constitutionality of reclamation or drainage laws has been upheld by the courts. [Hagar v. Reclamation District, 111 U. S. 701; Head v. Amoskeag Mfg. Co., 113 U. S. 9; Rutherford v. Maynes, 97 Pa. St. 78; Comrs. of Highways v. Drainage Comrs., 127 Ill. 581; Riebling v. People, 145 Ill. 120; Kinyon v. Duchene, 21 Mich. 498; Sessions v. Crunkilton, 20 Ohio St. 349; Tidewater Company v. Coster, 18 N. J. Eq. 518.]

California, Pennsylvania, Illinois, Michigan, Ohio and New Jersey, have reclamation laws, based upon the same principles as our statute. The details of the laws may be different, the agencies employed by the

State to carry the laws into effect may differ, but this in nowise affects the constitutionality of the laws. The fact that under some laws the county courts are charged with the duty of carrying the law into effect, while in others commissioners are provided for that purpose, and in others the people themselves are empowered to, organize into corporations called drainage districts makes no difference. It is competent for the State to raise up a governmental agency for the enforcement of its police powers and for the purpose of enhancing its revenues and carrying its revenue laws into effect. The agency thus created is an arm of the State, a political subdivision of the State, and exercises prescribed functions of government and is not a private corporation in any sense. [Morrison v. Morey, 146 Mo. l. c. 561 (where the people were authorized to form a corporation); Tide-Water Co. v. Coster, 18 N. J. Eq. 518 (where commissioners were to be appointed by a justice of the Supreme Court); Sessions v. Crunkilton, 20 Ohio St. 349 (where county commissioners and township trustees were charged with the carrying into effect the act); Kinyon v. Duchene, 21 Mich. 498 (where drain commissioners to be appointed by the board of supervisors were provided for); Comrs. of Highways v. Drainage Comrs., 127 Ill. 581 (where drainage Commissioners were provided for); Hagar v. Reclamation District, 111 U. S. 701 (where the people of the district were authorized to organize as a district, and to elect a board of trustees to manage the matter); Turlock Irrigation District v. Williams, 76 Cal. 360 (where the people of the district were authorized to organize as a district and to elect a board of directors to manage the matter).]

The legal principles upon which reclamation laws rest are so admirably stated in Hagar v. Reclamation District, 111 U. S. 701, that a short extract from the opinion of Mr. Justice FIELD in that case is warranted. He said:

"It is not open to doubt that it is in the power of the State to require local improvements to be made

which are essential to the health and prosperity of any.
community within its borders.    To this end it may pro-
vide for the construction of canals for draining marshy
and malarious districts, and of levees to prevent in-
undations, as well as for the opening of streets in cities
and of roads in the country.    The system adopted in
California to reclaim swamp and overflowed lands by
forming districts, where the lands are susceptible of
reclamation in one mode, is not essentially different
from that of other States, where lands of that descrip-
tion are found.    The fact that the lands may be situated
in more than one county, can not affect the power of
the State to delegate authority for the establishment
of a reclamation district to the supervisors of the
county containing the greater part of the lands.    Such
authority may be lodged in any board or tribunal which
the Legislature may designate.    In some States the
reclamation is made by building levees on the banks of
streams which are subject to overflow; in other States
by ditches to carry off the surplus water.    Levees or
embankments are necessary to protect lands on the
lower Mississippi against annual inundations.    The
expense of such works may be charged against parties
specially benefited, and be made a lien upon their
property.    All that is required in such cases is that
the charges shall be apportioned in some just and rea-
sonable mode, according to the benefit received.    Ab-
solute equality in imposing them may not be reached;
only an approximation to it may be attainable.    If no
direct and invidious discrimination in favor of certain
persons to the prejudice of others be made, it is not
a valid objection to the mode pursued that, to some
extent, inequalities may arise.    It may possibly be that
in some portions of the country there are overflowed
lands of so large an extent that the expense of their
reclamation should properly be borne by the State.
But this is a matter purely of legislative discretion.
Whenever a local improvement is authorized, it is for
the Legislature to prescribe the way in which the means
to meet its cost shall be raised, whether by general taxa-

tion, or by laying the burden upon the district specially benefited by the expenditures. [County of Mobile v. Kimball, 102 U. S. 691, 704.] The rule of equality and uniformity, prescribed in cases of taxation for State and county purposes, does not require that all property, of all persons in a county or district, shall be taxed for local purposes. Such an application of the rule would often produce the very inequality it was designed to prevent. As we said in Louisiana v. Pilsbury, 105 U. S. 278, 295, there would often be manifest injustice in subjecting the whole property of a city, and the same may be said of the whole property of any district, to taxation for an improvement of a local character. The rule, that he who reaps the benefit should bear the burden, must in such cases be applied.''

The opinion of FOOTE, C., in Irrigation District v. Williams, 76 Cal. 1. c. 367, is so apposite to this case that it requires partial reproduction here. He said: ''One of the distinguished counsel for the defendant contends that the districts contemplated by the act are private corporations, formed for a private purpose; to use his own language: 'Such an organization has none of the elements of a public municipal body.' While another able attorney on the same side contends that 'all the constituents of a public corporation are present, and to that class of corporations a district of the statute must be assigned,' and claims that the money sought to be raised under the act is a general tax, and that the system of organization of the corporations prescribed in the act is in conflict with the general plan of constitutional political organizations, and that the mode of taxation provided is different from that made necessary by the Constitution for general governmental purposes, and therefore the act is void. We are inclined to agree with the last-mentioned advocate of the defendant's cause, but to the extent only that the districts, when organized as provided in the act under discussion, have all the elements of corporations formed to accomplish a public use and purpose, according to the rules of law laid down in Hagar v. Super-

visors Yolo County, 47 Cal. 223; Dean v. Davis, 51 Cal. 406; People v. Williams, 56 Cal. 647; People v. La Rue, 67 Cal. 526; Reclamation District v. Hagar, 66 Cal. 54. The results to be derived from a drainage law, and one which has for its purpose the irrigation of immense bodies of arid lands, must necessarily be the same, as respects the public good; the one is intended to bring into cultivation and make productive a large acreage of land which would otherwise remain uncultivated and unproductive of any advantage to the State, being useless, incapable of yielding any revenue of importance towards the support of the general purposes of State Government, by reason of too much water flowing over, or standing upon, or percolating through, them. The other has for its main object the utilizing and improvement of vast tracts of arid and unfruitful soil, desert-like in character, much of it, which, if water in sufficient quantity can be conducted upon and applied to it, may be made to produce the same results as flow from the drainage of large bodies of swamp and overflowed lands. Such a general scheme, by which immigration may be stimulated, the taxable property of the State increased, the relative burdens of taxation upon the whole people decreased, and the comfort and advantage of many thriving communities subserved, would seem to redound to the common advantage of all the people of the State, to a greater or less extent. It is true that incidentally private persons and private property may be benefited, but the main plan of the Legislature, viz., the general welfare of the whole people, inseparably bound up with the interests of those living in sections which are dry and unproductive without irrigation, is plain to be seen pervading the whole of the act in question. This is not a law passed to accomplish exclusive and selfish private gain; it is an extensive and far-reaching plan, by which the general public may be vastly benefited; and the Legislature acted with good judgment in enacting it.''

The case of Columbia Bottom Levee Co. v. Meier, 39 Mo. 53, is such a complete answer to so many of

the contentions made in this case, that an extract from the opinion by FAGG, J., in that case is appropriate: He said: "The professed object of the act incorporating the Columbia Bottom Levee Company was to reclaim certain lands adjacent to the Missouri and Mississippi rivers, in the county of St. Louis, from liability to overflow. The designated limits embraced a large amount of land belonging to a number of different proprietors, and in the preamble to the act it is assumed to be passed upon their application. The first board of directors is designated in the act and the manner of their organization pointed out. Whenever, therefore, it is shown that the said organization did take place as directed, there was a legally constituted company in existence duly authorized by the act to proceed at once to carry out the purpose of its creation. There can be no question now as to the power of the Legislature to create such a company, and to invest it with all the necessary power and authority to construct whatever works may be necessary to accomplish the object intended, and to raise the funds to pay for the same by assessments on the lands to be benefited thereby. This question was fully discussed and determined in the case of Egyptian Levee Co. v. Hardin, 27 Mo. 495. The appellant here (defendant below) insists that he was not a member of the company, and can not be held liable to its assessments unless he had expressly given his assent to the exercise of such a power by an acceptance of the charter. The power of the Legislature to delegate the authority to this company to levy a tax or assessment for the purposes indicated being settled, it follows necessarily that his dissent or assent is a matter of no consequence. The act is evidently passed upon the idea that it is a work of sufficient public utility to require its execution and to justify the incorporation of a company with the powers granted by it. The power to levy an assessment upon the lands in question is not to be understood

Vol 170 mo—17.

as a power to tax in the ordinary meaning of that term. It is the power to compel the payment of a sum limited by the terms of the law as a compensation for a direct benefit conferred. Suppose that the State itself had undertaken to do this work. Will it be pretended that there is no power to compel the owners of the land to pay a tax sufficient to compensate for the actual amount of benefit received by them? If the State can do it, certainly it can delegate the power to a company to do the same thing. Upon the idea, then, that there was a public necessity for this work—and the Legislature must be the judge of that matter—and that it would result in direct benefit to the lands designated by the act, there can be no hardship upon individuals when the rate of assessment is equal and the terms are fixed by which they can have a voice in controlling the affairs of the company.''

These considerations impel the conclusion that the drainage laws of this State are constitutional; and that the corporations organized thereunder to carry them into effect are public, governmental agencies and in no sense private corporations, and that the benefits assessed are legal.

The fact that the unwilling citizen is affected by the law and drawn into the corporation against his will, does not affect the constitutionality of the law. The same is true of every law. Many persons object to many laws, and are drawn within the pale of the law against their will; but this does not affect the constitutionality or validity of the law. So likewise laws authorizing the formation of cities, towns, townships and school districts draw unwilling persons into such association for governmental purposes, and entail taxes and special burdens, and individual restraints that were not before imposed. But such results must follow from all laws and all governments. The welfare of the State, the health of the people of the State or of a particular locality of the State, is a matter of governmental concern, and the fact that there are those who are unwilling to become a part of a governmental division of the

State, and unwilling to bear the burdens of government, even where they result in personal benefit to them, does not affect the validity of the law.

It only remains to say that the right of trial by jury as guaranteed by the Constitution is in no manner impaired by the laws under consideration. No right of trial by jury existed in such cases at common law or was ever accorded by any Constitution of this State. Nor is it true that the defendants are deprived of their property without due process of law. Before their property is brought within the benefit district or drainage district all owners of property are given a day in court. The fact that this case is here is conclusive evidence the defendants are enjoying all the benefits of due process of law, for they are contesting the power of the State to assess their property even before any work of drainage has been done.

The fact that each owner is entitled to one vote for every acre of land owned by him creates no more infirmity in the law, than the right of each stockholder of any corporation to cast as many votes as he owns shares of stock, renders such laws invalid. In both instances the majority in interest instead of the majority in number controls, and who shall say such laws are not just?

These considerations result in the affirmance of the judgment of the circuit court. All concur, except *Valliant, J.,* absent.