Okey, J.
On September 28, 1873, the council of the city of Cleveland adopted an ordinance for the extension of Bond street from Superior street to Euclid avenue. The cost of the land appropriated for the purpose was $118,000. The money to pay for the land was obtained by issuing the bonds of the city, in anticipation of an assessment, payable in live annual installments, with interest, and these bonds have been'renewed. The second section of the ordinance provided : “ that the cost and expense of opening and extending said street shall be levied and assessed upon the lots or parcels of land benefited thereby, as provided by an act of the general assembly of the state of Ohio, passed April 12, 1873 ” (70 Ohio L. 126). The municipal code, then in force, among other things provided as follows, with respect to assessments and re-assessments.
§ 539 (as amended April 12, 1873, 70 Ohio L. 126). “ Where the council of any municipal corporation shall appropriate any lots or lands for the purpose of laying off, opening, extending, straightening or widening any street, alley or ,public highway, it shall have power to assess the costs and expense of such appropriation and improvement upon the lots or lands benefited thereby, including lots and lands that are contiguous and adjacent, as well as those that abut upon said street, alley or highway, or upon the general duplicate of the real and personal property subject to taxation within the limits of the corporation, as provided in section 583.” . . .
§ 543 (as amended May 2. 1871, 68 Ohio L. 125). “ In no case shall the tax or assessment specifically levied and assessed upon any-lot or land, for any improvement, amount to more than twenty-five per centum of the value of such lot or land as assessed for taxation ; the cost exceeding the said per centum that would otherwise be chargeable on such lot or land shall be paid by the corporation out of its general revenues : provided, that in cities of the first class the tax or assessment *524 specially levied and assessed upon any lot or land for any improvement, may amount to twenty-five per centum of the value of such lot or land after such improvement is made, the cost exceeding the said per centum that would otherwise be chargeable on such lot or land shall be paid by the corporation out of its general revenue.” [This section was repealed and reenacted in a changed form in 1874 (71 Ohio L. 45), in 1875 (72 Ohio L. 68), and in 1876 (73 Ohio L. 171), but it is not necessary to determine whether or not the section as changed in either of those years applied to this improvement, for the case before us does not necessarily involve such question.]
§ 551. “ Whenever it shall appear to the council that any special assessment is invalid by reason of informalities or irregularities in the proceedings, or when any court of competent jurisdiction shall adjudge any such assessment to be illegal, the council, whether the improvement has been made or not, shall have power to order a re-assessment.”
§ 552. “ All jtroceedings upon such reassessment, and for the collection thereof, shall be conducted in the same manner as is provided for the original assessment.”
§ 5S3 (as amended April 12, 1873, 70 Ohio Law, 127). “ Whenever it shall be deemed necessary by the council of any municipal corporation to open, extend, straighten or widen any street, alley or public highway, within the limits of such corporation, the council of such corporation shall provide by ordinance for the same ; and such ordinance shall briefly, and in general terms, describe the property sought to be appropriated, for the purposes aforesaid. The proceeding for such appropriation shall be as in such cases provided for, in an act entitled ‘ an act to provide for the organization and government of municipal corporations,’ passed May 7, 1S69, and as amended April S, 1S70. The assessments made for the purpose of paying the cost and expense of opening, extending, widening or straightening such street, alley or highway, shall be made and approved in accordance with sections 577, 578, 5S2, 584, 5S5, 5S6, 5S7, 5S8 and 5S9, and subject to the limitations contained in section 543 (as amended May 2, 1871).”
§ 584. “In all cases in which it is determined to assess the *525 whole or any part of the cost of any improvement upon the lots or lands bounding or abutting upon the same, or upon other lots or lands benefited thereby, the council may require the board of improvements, or may appoint three disinterested freeholders of the corporation, or vicinity, to report to the council an estimated assessment of such cost on the lots or lands to be charged therewith, in proportion, as nearly as may be, to the benefits which may result from the improvements to the several lots or parcels of land so assessed, a copy of which assessment shall be filled in the office of the clerk of the corporation for public inspection.”
§ 585 provides for publication of notice of such filing; section 586 provides for filing objections to the assessment; section 587 provides for the equalizing board and its duties; section 588 provides for confirming the report, which by section 589 is to be by a two-thirds vote of council. Other sections referred to in section 5S3, require no special mention.
As contemplated by the ordinance, the city caused an assessment to be prepared by an assessing and án equalizing board, and having confirmed the assessment, an ordinance was passed on May 2, 1876, levying such assessment on the real estate therein designated. Rut this court, at the December term, 187S, perpetually en joined the assessment. The grounds of the decision are fully stated in Chamberlain v. Cleveland, 34 Ohio St. 551, and need not be here repeated. It is sufficient to say that the validity of the statutes upon the subject was not questioned, nor was the power to make an assessment for the improvement doubted.
On June 9,1879, council passed, in due form, the following ordinance:
“ An ordinance to require the board of improvements to prepare an estimated assessment for opening Bond street, from Superior street to Euclid avenue, and repeal an ordiance levying an assessment for that purpose, and rescind certain resolutions and orders pertaining thereto.
“ Section 1. Be it ordained by the city council of the city of Cleveland (two-thirds of all the members elected, concurring), that the board of improvements be required to prepare *526 an estimated, assessment of the damages awarded, and costs and expenses incurred in opening and extending Bond street from Superior street to Euclid avenue, or so much thereof as may be lawfully assessed as herein indicated upon all the lots and lands especially benefited by said improvement, in proportion to the benefits which resulted to such lots and lands from said improvment, and limited to the special benefit conferred thereby, on each lot or parcel of land assessed, and to one-fourth the value thereof, at the time, and in view of the appropriation for said improvement and calculated on the basis of being payable in five annual installments to be prepared in the manner prescribed by law.
“ Section 2. That an ordinance entitled ‘ An ordinance to levy an assess a special tax to pay the damages awarded, and the costs and expenses incurred in opening Bond street,’ passed May 2d, 1876, be and the same is hereby repealed ; and that all resolutions and orders providing for the assessment levied by said ordinance, and the resolution adopted May 12, 1879, requiring the board of improvements to prepare an estimated assessment for said improvement, be and the same are hereby rescinded.”
On February 9,1S80, the board of improvements submitted to council an estimated assessment, notice of which was published as required by section 5S5; and objection to the assessment having been filed as provided in section 586, a board of equalization was appointed, as provided for in section 587, “ to equalize the same in such manner that the assessment upon any lot or parcel of land shall not exceed the special benefit conferred thereon by the improvement, nor one-fourth of the value thereof at the time and in view of the appropriation therefor, and distribute the assessment amongst the several lots and parcels of land, in the proportion that the special benefit to each lot or parcel of land bears to the whole special benefit conferred by the improvement, the objections- to be determined and the assessment equalized according to law.”
The board of equalization having made report, the equalized assessment was confirmed by council on April 2, 1S80. On June 14, 1880, an ordinance was passed levying and as *527 sessing a special tax, in accordance with such assessment, and that ordinance was amended June 28, 1880.
The real estate of Elizabeth A. Raymond and Emma S. Raymond being embraced in the assessment, they prosecuted an action in the court of common pleas of Cuyahoga county, against the city, to enjoin, the enforcement of the assessment. An answer and a reply were filed, and after the cause was decided in the court of common pleas, it was appealed to the district court. That court having heard the testimony, found for the city and dismissed the petition ; and the cause comes into this court by petition in error.
It will be seen that the municipal code, as amended in 1873, authorized an assessment for land taken for a street improvement, and permitted such assessment to be made “ upon the lots or lands benefited thereby, including lots and lands that are contiguous and adjacent; as well as those that abut upon the street, alley or highway.” But it is said a taxing district is essential to a valid assessment, and that no such district as the law requires was provided for by the statutes then in force, and that those provisions were in conflict with the' constitution, art. 13, § 6, which requires that the general assembly shall restrict the power of assessment by municipal corporations, so as to prevent the abuse of such power. No doubt a taxing district is essential to a valid assessment. Cooley’s Taxation, 170. But when regard is had,to the true definition of an assessment for street purposes, namely, “ those special and local impositions upon property in the immediate vicinity of an improved street, which were necessary to pay for the improvement, and laid with reference to the special benefit which such property derived from the expenditure of the money ” (Hill v. Higdon, 5 Ohio St. 243, 247); to the language of the statute already quoted, granting the power to assess, and confining it to “ lots and lands that are contiguous and adjacent ” and “ those that abut upon” the improvement; the limitations placed by section 543 on the power with respect to the amount; the powers imposed upon and exercised by the board of improvements and the equalizing board, the nature of the duties of such- boards being well stated in Hagar *528 v. Reclamation Dist., 111 U. S. 701, 710, and cases there cited ; and in view of Meissner v. Toledo, 31 Ohio St. 387, and other cases, reported and unreported, virtually sustaining the constitutionality of the legislation in this respect, — we have no doubt that the statutory provisions quoted are in harmony with the constitution. To be sure, they are liable to great abuse, and the legislature, in view of that fact, has changed the law, so that now the specific property to be assessed must be designated before the improvement is made. Rev. St. § 2264.
The further objection is made that this was an attempt to assess and not to re-assess, and that there was no statutory provision then in force which authorized either an assessment or a re-assessment for the improvement in question. An assessment is well defined in Hill v. Higdon, ubi supra. A re-assessment is made for the purpose of remedying some error or omission in an assessment, and is a re-apportionment of the cost and expense of such improvement, and the imposition may be either upon the same lands or part of the same lands, and it may include other lands. There was no attempt by the ordinance of June 9, 1879, to institute a proceeding de novo, but it was a re-assessment,and in our opinion clearly authorized.
Furthermore, it is urged that the statutory provisions hereinbefore quoted, were repealed by the act of 1878 (75 Ohio L. 161-419), without a saving as to cases where proceedings to assess had been commenced but no valid assessment had been made; that, therefore, no re-assessment can lawfully be made under those provisions, subsequently to such repeal; and that no re-assessment can be made under the act of 1878, or the Revised Statutes, because it is a condition precedent to a lawful assessment, under those statutes, that the lots ana lands to be assessed should be designated in an ordiance before the improvement is made, and that was not done in this case.
Ve find it necessary to answer but one of these propositions, that is, whether there was an express saving to the city of the right to re-assess under the acts in force in 1873, those acts having all been repealed by the act of 1878, above mentioned. Counsel for the city rely on the following provision in *529 the act of 1878: “ All rights and property which were vested in any municipal corporation under its former organization, shall be deemed vested in the same municipal corporation under the organization made by this title; and no rights or liabilities,either in favor of or against such corporation, existing at the time of the taking effect of this title, and no suit, prosecution or proceeding, shall be in any manner affected by such change, but the same shall stand or proceed as if no such change had been made.” 75 Ohio L. 165, § 4; Eev. Stats. § 1539. Counsel for plaintiffs in error, contend that the provision has relation to vested and property rights, pending actions, proceedings in the nature of actions, and the like, and does not extend to or embrace the right to make such an assessment or re-assessment. But we are unwilling to place any such limitation upon the provision. It is remedial, and no violence is done to the language by holding that it preserves the right to make this reassessment under the municipal code of 1869. With respect to vested rights no saving was necessary. If the wordproceed-ing, where it occurred in statutes relating to practice, has ,in one or two instances received a construction which seemed to limit it to litigation in the nature of a suit, that affords no justification for giving to the word such restricted meaning where it occurs in a provision relating to matters in fieri under a municipal code. See Lafferty v. Shinn, 38 Ohio St. 46, and cases cited. We think the saving has peculiar reference to matters like that involved here, and indeed the municipal code of 1869, to which the provision last quoted from the act of 1878 related, employs the word proceeding repeatedly in the sense of steps to make an assessment or a re-assessment. See sections 544, 549, 550, 551, 552 and 583. Where the meaning of a word or phrase in a statute is doubtful, but the meaning of the same word or phrase is clear where it is used elsewhere in the same act or an act to which the provision containing the doubtful word or phrase has reference, the word or phrase in the obscure clause will be held to mean the same thing as in' the instances where the meaning is clear. Bishop’s Written Laws, § 95a. Chamberlain v. Cleveland, supra, and other cases were pending when the act of 1878 was passed. They *530 did not involve the power to assess or the justice of assessment, but the power to make, or the justice of the particular assessment, in the form that it was made, and it would be surprising if the legislature intended to take away the power to reassess during the pending of those cases, so that it might not be exercised even where an assessment was enjoined for mere informality. We could only so hold by giving to the provisions a narrow and as we think unreasonable construction. Whether an express saving was necessary we do not decide.
Other questions are made, but they require no remark.

Judgment affirmed.