A. C. SIMERSON, *et al., vs.* INTER-ISLAND STEAM NAVIGATION COMPANY, LTD., and JAMES L. HOLT, Intervenor.

## October 11, 1904.

*Due Process of Law:*  Proceedings before a court, not essential to due process of law, but action of executive officers under statutory authority may be within the requirements.

*Same.—Taxation:*  The constitutional provision against seizure of property without due process of law, less strictly construed in proceedings for collection of taxes than in other cases.

*Same.—Taxation.—Opportuity to Be Heard:*  One may not be legally deprived of his property without an opportunity to be heard wherever such opportunity is necessary for his protection.

*Same.—Opportunity to Be Heard:*  By the Hawaiian laws, persons who are in the Territory on the 1st day of January are liable for personal taxes for that year. A proceeding therefore for the garnishment of the credits of a person which gives him no notice or opportunity to be heard on the question of his liability, is not due process of law.

*Garnishment of Wages for Taxes:*  Proceedings for garnishment of the credits of persons neglecting or refusing to pay personal taxes under the Hawaiian laws, which do not state the names of such persons, are invalid.

*Taxation.—Status of an Assessment.—Seamen's Wages—Garnishment:*  An assessment of taxes after becoming delinquent, is not equivalent to a judgment or execution under Hawaiian law. In such a case a seaman's wages are protected against garnishment by federal law.

*Same.—Attachment:*  The Hawaiian law exempting one-half of the wages due laborers or persons working for wages from attachment, etc., does not exempt such wages from attachment for taxes, as the law makes an exception allowing attachment for "taxes or fines or any debt due the Territory of Hawaii."

In Admiralty:   Libel in *Personam* for Seamen's Wages:

J. J. Dunne, and A. S. Humphreys, Proctors for Libellants.
Smith & Lewis, Proctors for Libellee.
M. F. Prosser, Attorney for Intervenor.

Dole, J.   The libellants in this case bring their action as mariners against the libellee,—Inter-Island Steam Navigation Company, Limited,—a corporation, for wages due them as employes of the libellee, claiming that they were engaged by the libellee prior to the month of June, 1904, to serve as mariners in various capacities on board of its steam vessels at varying rates of wages; that it was the custom of the libellee to pay wages of said libellants twice a month, on the second and seventeenth days thereof, and that libellee reserved five dollars and a half out of the wages of libellants, which were due on the 17th day of June, and refused to pay the same; that some of the names given in the libel as names of libellants, are fictitious names, used by reason of the difficulty of obtaining promptly the correct names of the libellants who are represented by such fictitious names, and asked that the correct names, when ascertained, may be inserted in the place of such fictitious names; with a general prayer for relief.

The libellee, answering, says in substance, admitting the allegations of the libel that five dollars and a half were reserved by it from the wages due libellants, or such libellants as are admitted as claimants in the answer, and states as a reason of such reservation of said amounts from the wages of each of the libellants according to said corrected list, that on the morning of the said 17th day of June, it received from James L. Holt, Assessor of the First Taxation Division of the Territory of Hawaii, a letter which is as follows,—leaving out the names and descriptions of the persons mentioned therein:

"HONOLULU, June 17, 1904.

"J. A. KENNEDY, ESQ.,

"Pres. Inter-Island Steam Nav. Co., Ltd.,

"Dear Sir:

"The following persons in your employ have neglected to pay "their poll, road and school tax for the year 1904, and the same "are now delinquent. (Names and descriptions of persons).

"I hereby notify you that in accordance with Act 86, Session "Laws 1903, I hold the Inter-Island Steam Navigation Co., "Ltd., responsible for the payment of said delinquent taxes "amounting in each case to $5.50.

"Respectfully yours,

"JAMES L. HOLT,

"Assessor, 1st Taxation Division."

And that on account of such letter the libellee reserved five dollars and a half out of the wages of each of the said persons and tenders the same, the aggregate correct amount being $434.50, to the clerk of the court. The libellee further said that it was willing and anxious to pay said sums to the parties mentioned in said corrected list or to the Tax Assessor, but owing to the conflicting claims of both therefor, it cannot safely pay such sums to any of the said persons, and prays for a decree determining the rights of the various parties to the said fund.

On the 6th of July, the said Assessor, James L. Holt, appeared by the Attorney General of the Territory, and asked to be allowed to intervene in the said action, substantially on the grounds set forth above and as referred to in the said letter, reiterating his claim to such parts of the wages as mentioned above and offering as his authority for such claim in the manner in which it was made as set forth above, Act 86 of the Laws of 1903 of the Territory of Hawaii. An order was made admitting the said Holt to be a defendant to the libel in the case,

and the case thereafter came on to be heard on the 11th day of July, 1904.

The issue in this case is raised in connection with Act 86 of the laws of the Territory of Hawaii of 1903, which provides as follows:

'Sec. 6a.   Every person indebted to one who neglects or refuses to pay the personal tax, that is to say, the poll tax, school tax and road tax, becomes liable therefor, and must pay the same for such other person, provided the amount he is indebted to such person is equal to the amount of the personal tax, after service upon him by the assessor of a notice in writing stating the name of such person and the amount due, and every such person paying the personal tax of another may deduct the amount thereof from any indebtedness to such other person."

The libellants contend that if this money, taken from their wages, should be paid to the intervenor they would be deprived of their property without due process of law, in that without notice or any knowledge on their part, the part of their wages under consideration has been arrested in the hands of their employer without opportunity of defense.   The intervenor by his counsel, claims that the statute is consistent with the constitutional rights of the libellants, that the action of the intervenor under the statute was due process of law and that the libellants have nothing to complain of.

The question of what is due process of law is, to some extent, in an unsettled state, authorities giving definitions thereof which sometimes appear to be inconsistent with each other.   It is, however, settled that due process of law does not necessarily depend on proceedings before a court of justice but the action of executive or administrative officers under provisions of the statute, may as fully come into the requirements of the phrase "due process of law" as proceedings in a court.   It is also generally recognized that proceedings for the collection of taxes are in a class by themselves and require a less strict conformity to the constitutional provision that one may not be deprived of

property without due process of law, than in other cases.  *Mc-Millen v. Anderson,* 95 U. S. 37.  Why this should be so is not very clearly stated| by the authorities, the prevailing reason given being that it is impracticable to collect taxes promptly and economically if the strict requirements of the meaning of due process of law should be demanded.  It is also suggested by some authorities that such claims by the government, after having been fixed by assessment and placed in the hands of officers authorized by law to collect the same, are in the nature of executions, as if the ascertainment of the amount of the taxes through the provisions for the assessment thereof are in the nature of a judgment.  Out of the somewhat confusing expressions of the authorities on this point, I am able to reach the following definite principles:

Administrative officers may not "disregard the fundamental principles that inhere in 'due process of law,' as understood at the time of the adoption of the Constitution.  One of these principles is that no person shall be deprived of his liberty without opportunity at some time to be heard before such officers in respect of the matters upon which that liberty depends."  *Japanese Immigrant Case (Yamatawa v. Fisher),* 189 U. S. 100-101.

This rule applies as well to deprivations of property: also,

"It is essential to the validity of State taxation, other than that of a personal character, such as licenses for privileges or the exercise of franchises, that the tax-payer shall at some stage in the proceedings have notice or an opportunity to be heard; that if such notice is not given or opportunity afforded to be heard, either in levying or collecting the tax, the proceeding will be wanting in that 'due process of law,' necessary to give its validity under the federal constitution."  *Scott v. City of Toledo,* 36 Fed. Rep., 397.

Also: "By 'due process' is meant one which, following the forms of law, is appropriate to the case and just to the parties to be affected.  It must be pursued in the ordinary mode prescribed

by the law: it must be adapted to the end to be attained and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought." *Hagar v. Reclamation District No. 108*, 111 U. S. 708.

Also: "It seems to be agreed, therefore, that property taken for the non-payment of taxes is not taken without due process of law, if the tax-payer is afforded an opportunity to be heard in relation to the tax, though it be only before the officers clothed with power to assess." *Trustees of Griswold College v. City of Davenport*, 65 Iowa, 634.

In assessing the value of property for the purpose of taxation or seizure by the government, an inquiry into the value of the land for such purpose makes it necessary that the owner should have notice and an opportunity of being present, "because in estimating the value, the tax officer's act is judicial; whereas if the imposition be a capitation or poll tax, or a license or occupation tax, or an assessment according to frontage or acreage, no notice is usual or requisite." *Guthrie, 14th Amendment to the Constitution,* 96.

The latter point is evidently based upon the fact that the conclusions are obvious, being fixed by law and requiring in addition, in some cases, merely an arithmetical calculation.

The Hawaiian law provides that a poll tax of one dollar, a school tax of two dollars and a road tax of two dollars shall be paid by every male inhabitant of the Territory between the ages of twenty and sixty years unless exempted by law. The persons exempted from these taxes are clergymen of a Christian denomination regularly engaged in their vocation, regular members of the Hilo Fire Department and officers and soldiers of the National Guard. This tax is assessed as of the first day of January in each year. The law provides that each person liable to pay taxes, and every owner or possessor of property, whether entitled to exemption or not, shall in the month of January of each year, make a tax return, enumerating certain facts as to

the description, situation and value of the property in his possession or control, the incumbrances thereon, animals subject to taxation in his possession or control, and names and nationalities of his employes. There is no requirement for a tax return containing a statement of facts by which the person making the return should be exempted from payment of personal taxes. If he is under twenty years or over sixty years, or is a clergyman, or is a member of the Hilo Fire Department or of the National Guard, no reference or provision is made for returning such facts, except as to the membership in the National Guard.

The law also requires the Assessor to give public notice during December, by advertising or posters, fixing a time during the following January, when tax-payers shall make their returns of property, animals subject to taxation, and employes, and provides that upon a failure to make such return, the Assessor may assess according to his best information, and the tax-payer shall be without the right of appeal therefrom. Although he is not required to notify the public to make return of their personal taxes or exemptions therefrom, and the notice is defective in this particular, yet, taken with the provision of the statute that "each person liable to pay taxes and every "owner or possessor of any property  *  *  *  whether en- "titled to exemption or not," shall make returns, I am not prepared to say that it is not sufficient notice to the tax-payer to afford him an opportunity of a hearing of his claims to exemption in a tax of this kind where the taxes are specific and generally understood.

There is another point which is more difficult to dispose of in relation to the law under which the intervenor acted, and that is the sweeping character of the notice to the libellee, which is claimed to be due process of law in this case. The letter says, "the following persons in your employ have neglected to pay "their poll, road and school tax for the year 1904 and the same "are now delinquent." There is nothing in these proceedings

to show that these people have been assessed for their personal taxes, except as this letter says they have, and the fact that the purported list included in the letter, of persons subject to these taxes, fails to give the names of a large number of such persons, makes it appear unlikely certainly that some of these people have ever been assessed before, for the conclusion is strong that if they had, the Assessor would be in the possession of a list of their names. These are described as firemen, cooks, waiters, stewards, Japs and engineers, giving the number of each class, consequently there is nothing in this proceeding to show that any of these men were in the country on the 1st day of January. So here is a proceeding which reaches the debtor of these men,—their employer, and arrests a portion of their wages in its hands and requires it to pay such funds over to the government as taxes of these libellants, of which demand and arrest of wages, the libellants have had no notice whatever except as they have learned about it in connection with the non-payment of their wages. If any of these men were not in the country on the 1st day of January last, that fact would relieve them from liability from these taxes; they have had no opportunity as far as appears of making such fact known. Counsel for the intervenor says in his brief, that it is admitted "that all the libel-"lants are male inhabitants of the Territory of Hawaii over "the age of twenty and under the age of sixty years, and were "such inhabitants on the first day of January, 1904." There is no such statement or admission among the papers, except in the brief of the intervenor's counsel, and it is not for him to admit but to prove it. Counsel for the intervenor refers to a similar statute of the State of California and another of the State of Idaho, which statutes, he says, are unquestioned as to their validity. I have not had an opportunity of reading the California statute but I have been able to refer to that of Idaho and find that it contains an important provision which is absent from the Hawaiian, and that is that the debtor is only liable for the taxes due from his creditor, if the latter being

liable therefor, neglects or refuses after demand to pay. I consider that to be a very important difference, for a demand for such taxes is a notice to the tax-payer affording him an opportunity of contesting his liability therefor and furnishing the information, as for instance, that he has come into the country after the first day of January, upon which fact he would be clear of all liability.

The law referred to above under which the Assessor has attempted to garnishee the libellants' wages in the hands of the libellee, provides that the notice to be served on a debtor of a person who fails to pay his personal taxes, shall state the name of such person. The notice in this case is defective in that out of ninety-eight persons charged with personal taxes only fifty-four were described by name. This was afterwards corrected by an oral stipulation in open court that a statement of names offered by the libellee should be accepted. This list contains seventy-nine names and gives their respective positions as employes in the fleet of the libellee. In answer to the prayer of the libellants, the names of libellants are corrected by the use of this list.

There is no issue between the parties on the question whether or not all of the libellants are mariners under the legal meaning thereof, and I find that they are all mariners.

Section 4536 of the Revised Statutes provides that "No "wages due or accruing to any seaman or apprentice shall be "subject to attachment or arrestment from any court." This section was repealed in 1874 but was restored in substance by the Act of February 18th, 1895, relating to Shipping Commissioners.

The counsel for the intervenor contends that after personal taxes have become delinquent they are equivalent to a judgment. The cases of *Telles v. Lynde,* 47 Fed. Rep., 912, and *The Queen,* 93 Fed. Rep., 834, decide that the law in question, Section 4536 of the Revised Statutes, does not exempt seamen's wages from an execution.

The Hawaiian tax law provides for the enforcement of delin-
quent taxes by distress, by action in assumpsit which contem-
plates the issue of execution under a judgment rendered in such
suit, and by arrest of the person owing delinquent personal
taxes, and prosecution before a district court with liability to a
sentence of imprisonment.   Although collection by distress has.
a similarity to an execution, the other provisions in the Hawai-
ian tax law for collection by suit and by arrest and prosecution
are inconsistent with the view that the legislature considered
an assessment to be a judgment and execution.   The cases re-
ferred to as authority for the theory that an assessment certified
to a collector, is an execution, are of two classes,—first, those
cases in which the court recognizes a similarity by way of illus-
tration, as in the cases of *Erskine v. Hohnbach,* 81 U. S. 613,.
616, and *First National Bank of Utica v. Waters,* 7 Fed. Rep.
152, 157, in which the courts wished to show that a collector,
as a ministerial officer, must obey the warrant delivered to him
and is protected by it in the same way as a sheriff is protected
by an execution regular on its face, placed in his hands.   There
is no authority here for the position that an assessment under
the Hawaiian law is an execution.

The other class of cases belongs to jurisdictions where the
statutes provide that "the warrant to a collector under our
"statute for the assessment and collection of taxes is in the
"nature of an execution," as in the case of *Preston v. Boston,*
12 Pick. 7, 14; and that "every revenue act from 1869 down
"to the present expressly provides that the tax list shall have the
"force and effect of a judgment and execution."   *State and
Guilford County v. Georgia Co.,* 112 N. C. 34, 36.   Cases based
on statutes of this character have no application to the question
before the court.

The reasoning above in relation to the question of due pro-
cess of law has an application also to the question whether an
assessment of taxes under the Hawaiian statute is a judgment
or execution; for if the notice by the assessor to the libellee in

this case,—which is the only assessment of libellants that appears, is not due process of law, then it cannot be considered as an execution.

The Hawaiian statutes contain no provision for the issue of a warrant in the nature of a mandate by the assessor to the collector, as is the case in the tax laws of many of the United States, but the assessor and the collector are the same person and he collects his own assessments.

The brief of counsel for the libellee calls attention to Act 52, Laws 1903, which provides that one-half of the wages due persons working for wages, shall be exempt from attachment, execution, distress, etc. This statute being an amendment of Section 8 of Act 9 of the Hawaiian laws of 1901, exempting certain personal property described in said Section 8 and other sections thereof, from attachment, execution, distress, etc., which property, however, is, by another section of the same law made subject to attachment for and execution upon judgments recovered for taxes or fines or any debt due the Territory of Hawaii, is also subject to the same exception, and the wages under consideration would not be exempt from attachment and execution by virtue thereof.

In accordance with the foregoing considerations, I find that the proceedings taken under Act 86, Hawaiian Laws 1903, do not come under the principle of "due process of law," and that the exemption of seamen's wages from attachment or arrestment by any court, created by Section 4536 of the Revised Statutes protects libellants' wages from the proceedings taken under the Hawaiian statute for the garnishment thereof.

A decree will be entered for the libellants for four hundred and thirty-four dollars and fifty cents, entitling each to five dollars and fifty cents.

Costs to the libellants to be paid by the intervenor.