# HAGAR v. RECLAMATION DISTRICT NO. 108.

## SAME v. SAME.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF CALIFORNIA.

Argued March 21st, 1884.—Decided May 5th, 1884.

*Constitutional Law—Legal Tender—Swamp Lands—Tax.*

It is within the discretion of the legislature of California to prescribe a system for reclaiming swamp lands, when essential to the health and prosperity of the community, and to lay the burden of doing it upon the districts and persons benefited.

Lands in California derived by grant from the Mexican government are subject to State legislation respecting swamp and overflowed lands.

The acts of Congress making the notes of the United States a legal tender do not apply to involuntary contributions in the nature of taxes or assessments exacted under State laws, but only to debts in the strict sense of the term ; that is, to obligations founded on contracts, express or implied, for the payment of money.

The distinction between a tax which calls for no inquiry into the weight of evidence, nor for anything in the nature of judicial examination before collection, and a tax imposed upon property according to its value to be ascertained by assessors upon evidence, pointed out and commented on.   In the former no notice to the owner is required.   In the latter the officers in estimating the value act judicially.

A law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the Fourteenth Amendment to the Constitution, which declares that no State shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it, either before that amount is determined, or in subsequent proceedings for its collection.

It is not competent for the owner of land which is part of a grant to a State under the swamp land act, 9 Stat. 519, to set up in proceedings begun to enforce a tax on the land assessed under a State law for the purpose of draining and improving it, that the State law impairs the obligation of the contract between the State and the United States, and so violates the Constitution ; because (1), if the swamp land act constituted a contract between the State and the United States he was no party to it ; and (2), the appropriation of the proceeds of the granted swamp lands rests solely in the good faith of the State.   *Mills County* v. *Railroad Companies*, 107 U. S. 557, affirmed.

The facts are stated in the opinion of the court

*Mr. W. C. Belcher* for appellant.

*Mr. A. L. Rhodes* for appellee.

MR. JUSTICE FIELD delivered the opinion of the court.

By an act of the legislature of California, passed in 1868, a general system was established for reclaiming swamp and over-flowed, salt marsh, and tide lands in the State, of which there is a large quantity, and thus fitting them for cultivation.

It will be sufficient for the purposes of this suit to state the general features of the system, without going much into detail. It provides for the formation of reclamation districts where lands of the kind stated are susceptible of one mode of reclamation; such districts to be established by the board of supervisors of the county in which the lands, or the greater part of them, are situated, upon the petition of one-half or more of the holders thereof. The petition being granted, the petitioners are required to establish such by-laws as they may deem necessary for the work of reclamation and to keep the same in repair; and to elect three of their number to act as a board of trustees to manage the same. This board is empowered to employ engineers and others to survey, plan, and estimate the cost of the work, and of land needed for right of way, including drains, canals, sluices, water-gates, embankments, and material for construction; and to construct, maintain, and keep in repair all works necessary for the object in view. The trustees are required to report to the board of supervisors of the county, or, if the district be in more than one county, to the board of supervisors in each county, the plans of the work and estimates of the cost, together with estimates of the incidental expenses of superintendence and repairs. The supervisors are then to appoint three commissioners, who are jointly to view and assess upon each acre to be reclaimed or benefited a tax proportionate to the whole expense, and to the benefits which will result from the works; which tax is to be collected and paid into the county treasury or treasuries, as the case may be, and placed to the credit of the district, to be paid out for the work of reclamation upon the order of the trustees, when approved by

the board of supervisors of the county. If the district be in more than one county the tax is to be paid into the treasury of the county in which the land assessed is situated. If the original assessment be insufficient for the complete reclamation of the lands, or if further assessments be required for the protection, maintenance, and repair of the works, the supervisors may order additional assessments upon presentation by the trustees of a statement of the work to be done, and an estimate of its cost, such assessments to be levied, and, if delinquent, collected, in the same manner as the original assessment.

The commissioners are required to make a list of the amounts due from each owner of land in the district, and of the amount assessed against the unsold land, and file the same with the treasurer of the county in which the lands are situated. The lists thus prepared are to remain in the office of the treasurer for thirty days or longer, if so ordered by the trustees, during which time any person can pay to the treasurer the amount assessed against his land ; but if at the end of the thirty days, or the extended time, the tax has not been paid, the treasurer is to transmit the list to the district attorney, who is to proceed at once against the delinquents in the manner provided by law for the collection of State and county taxes.

The political code of the State, which went into effect on the 1st of January, 1873, embraces substantially the provisions of the act of 1868. The changes are more in language than in substance. So far as subsequent proceedings are concerned the code prescribes the rule.

The Reclamation District No. 108, the plaintiff in the court below, was established in September, 1870, under the act of 1868. It embraces over 74,000 acres of land situated in the counties of Yolo and Colusa, and forming a compact body susceptible of one mode of reclamation. The trustees of the district originally estimated the cost of the reclamation works, including incidental expenses, at $140,000, and the commissioners appointed assessed that sum upon the lands in the district. The amount proved to be insufficient to complete the works, and upon the report of the trustees that the further sum of $192,000 was required for that purpose, the supervisors ordered

that amount to be assessed, and the commissioners appointed by them levied the assessment upon the lands. This assessment became delinquent, and the present suits were brought to obtain a decree that the several amounts charged upon the lands of the appellant are liens upon them, and for their sale to satisfy the charges. One of the suits is to enforce the liens on the lands in Yolo County, and the other the liens on the lands in Colusa County. On his motion they were both removed to the Circuit Court of the United States. That court held in each case that the several sums assessed were valid liens upon the lands of the appellant on which they were levied, and ordered that the lands be sold for the payment of the amounts, with interest and costs.

From these decrees the appeals are taken.

Of the several objections to the validity of the assessment urged in the court below, and pressed here, some arise under local statutes, not involving any questions of federal law; and some under the laws and Constitution of the United States. The former relate to the manner in which the reclamation district was formed, it being established by the supervisors of one county, while part of the lands are situated in another county; to the fact that the appellant derived his title to his lands under a grant from the Mexican government; and to the requirement that the amounts assessed should be collected in gold and silver coin of the United States.

There being no federal question touching these matters, we follow the decision of the State tribunals as to the construction and validity of the statutes. It is not open to doubt that it is in the power of the State to require local improvements to be made which are essential to the health and prosperity of any community within its borders. To this end it may provide for the construction of canals for draining marshy and malarious districts, and of levees to prevent inundations, as well as for the opening of streets in cities and of roads in the country. The system adopted in California to reclaim swamp and overflowed lands by forming districts, where the lands are susceptible of reclamation in one mode, is not essentially different from that of other States, where lands of that description are found. The

fact that the lands may be situated in more than one county, cannot affect the power of the State to delegate authority for the establishment of a reclamation district to the supervisors of the county containing the greater part of the lands. Such authority may be lodged in any board or tribunal which the legislature may designate.

In some States the reclamation is made by building levees on the banks of streams which are subject to overflow; in other States by ditches to carry off the surplus water. Levees or embankments are necessary to protect lands on the lower Mississippi against annual inundations. The expense of such works may be charged against parties specially benefited, and be made a lien upon their property. All that is required in such cases is that the charges shall be apportioned in some just and reasonable mode, according to the benefit received. Absolute equality in imposing them may not be reached; only an approximation to it may be attainable. If no direct and invidious discrimination in favor of certain persons to the prejudice of others be made, it is not a valid objection to the mode pursued that, to some extent, inequalities may arise. It may possibly be that in some portions of the country there are overflowed lands of so large an extent that the expense of their reclamation should properly be borne by the State. But this is a matter purely of legislative discretion. Whenever a local improvement is authorized, it is for the legislature to prescribe the way in which the means to meet its cost shall be raised, whether by general taxation, or by laying the burden upon the district specially benefited by the expenditure. *County of Mobile* v. *Kimball*, 102 U. S. 691, 704. The rule of equality and uniformity, prescribed in cases of taxation for State and county purposes, does not require that all property, or all persons in a county or district, shall be taxed for local purposes. Such an application of the rule would often produce the very inequality it was designed to prevent. As we said in *Louisiana* v. *Pillsbury*, 105 U. S. 278, 295, there would often be manifest injustice in subjecting the whole property of a city, and the same may be said of the whole property of any district, to taxation for an improvement of a local character. The rule, that

he who reaps the benefit should bear the burden, must in such cases be applied.

The fact that the appellant's land was derived from a grant of the Mexican government in no respect affects the question. It is the character of the land and its susceptibility of being reclaimed under one system of works, and not the source of the owner's title, which authorize the action of the State. The lands granted by Mexico were not by the treaty, under which California was acquired, exempted from the control that the State exercises over all other lands. The objection made is founded upon the title of the act of 1868 and the language of some of its provisions, from which it is inferred that the system of reclamation prescribed was intended to apply only to lands acquired by the State under the Arkansas Swamp Act. But the Supreme Court of the State has passed directly upon this objection, in a controversy between the appellant and the supervisors of Yolo County with respect to this very land, and has held it untenable. 47 Cal. 222. Besides, the objection, if originally applicable, was obviated by subsequent legislation in 1872, prior to the assessment in question.

Nor is there anything in the objection that the law requires the assessment to be collected in gold and silver coin. The original act of 1868 did not prescribe the currency in which the charges were to be paid, but before the assessment was levied it was amended so as to require payment in gold and silver coin. The acts of Congress making the notes of the United States a legal tender do not apply to involuntary contributions exacted by a State, but only to debts, in the strict sense of that term, that is, to obligations for the payment of money founded on contracts, express or implied. This point was decided in *Lane County* v. *Oregon*, with reference to the first legal-tender act of 1862. 7 Wall. 71. Subsequent acts imparting the legal-tender quality to notes did not change the general language of that act. They make such notes a legal tender "in payment of all debts, public and private, within the United States." In the case mentioned, a statute of Oregon requiring the payment of taxes for State and school purposes to be collected in gold and silver coin was sustained on two grounds :

*First,* that it was the right of each State to collect its taxes in such material as it might deem expedient, either in kind, that is to say, by a certain proportion of products, or in bullion, or in coin, the court observing that the extent to which the power of taxation of the State should be exercised, the subjects upon which it should be exercised, and the mode in which it should be exercised were all equally within the discretion of its Legislature, except as restrained by its own constitution and that of the United States, and by the condition that the power could not be so used as to burden or embarrass the operations of the Federal government; and, *second,* that the legal-tender act had no reference to taxes imposed by State authority, but only to debts, in the ordinary sense of the word, arising out of simple contracts, or contracts of specialty, which include judgments and recognizances. Assessments upon property for local improvements are involuntary exactions, and in that respect stand on the same footing with ordinary taxes. They are, therefore, covered by this decision; the State could determine in what manner they should be discharged.

The objections urged to the validity of the assessment on federal grounds are substantially these: that the law under which the assessment was made and levied conflicts with the clause of the Fourteenth Amendment of the Constitution declaring that no State shall deprive any person of life, liberty, or property without due process of law; and impairs the obligation of the contract between California and the United States, that the proceeds of the swamp and overflowed lands ceded by the Arkansas Act should be expended in reclaiming them.

That clause of the Fourteenth Amendment is found, in almost identical language, in the several State Constitutions, and is intended as additional security against the arbitrary deprivation of life and liberty and the arbitrary spoliation of property. Neither can be taken without due process of law. What constitutes that process it may be difficult to define with precision so as to cover all cases. It is, no doubt, wiser, as stated by Mr. Justice Miller in *Davidson* v. *New Orleans,* to arrive at its meaning " by the gradual process of judicial inclusion and ex-

clusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded." 96 U. S. 97, 104. It is sufficient to observe here, that by "due process" is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. The clause in question means, therefore, that there can be no proceeding against life, liberty, or property which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights. *Hurtado* v. *California*, 110 U. S. 516, 536.

The appellant contends that this fundamental principle was violated in the assessment of his property, inasmuch as it was made without notice to him, or without his being afforded any opportunity to be heard respecting it, the law authorizing it containing no provision for such notice or hearing. His contention is that notice and opportunity to be heard are essential to render any proceeding due process of law which may lead to the deprivation of life, liberty, or property. Undoubtedly where life and liberty are involved, due process requires that there be a regular course of judicial proceedings, which imply that the party to be affected shall have notice and an opportunity to be heard; so, also, where title or possession of property is involved. But where the taking of property is in the enforcement of a tax, the proceeding is necessarily less formal, and whether notice to him is at all necessary may depend upon the character of the tax, and the manner in which its amount is determinable. The necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments. As stated by Mr. Justice Bradley, in his concurring opinion in *Davidson* v. *New Orleans:* "In judging what is 'due process of law' respect must be had to the cause and object of the taking, whether

under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or some of these; and if found to be suitable or admissible in the special case, it will be adjudged to be ' due process of law,' but if found to be arbitrary, oppressive, and unjust, it may be declared to be not ' due process of law.' " The power of taxation possessed by the State may be exercised upon any subject within its jurisdiction, and to any extent not prohibited by the Constitution of the United States. As said by this court : " It may touch property ' in every shape, in its natural condition, in its manufactured form, and in its various transmutations. And the amount of the taxation may be determined by the value of the property, or its use, or its capacity, or its productiveness. It may touch business in the almost infinite forms in which it is conducted, in professions, in commerce, in manufactures, and in transportation. Unless restrained by provisions of the Federal Constitution, the power of the State, as to the mode, form, and extent of taxation, is unlimited, where the subjects to which it applies are within her jurisdiction." *State Tax on Foreign-Held Bonds*, 15 Wall. 300, 319.

Of the different kinds of taxes which the State may impose, there is a vast number of which, from their nature, no notice can be given to the tax-payer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business), and generally, specific taxes on things, or persons, or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question, that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature, and nothing could be changed by hearing the tax-payer. No right of his is, therefore, invaded. Thus, if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard, or bushel, or gallon, there is nothing the owner can do which can affect the amount to be collected from him. So, if a person wishes a license to do business of a particular kind, or at a particular

place, such as keeping a hotel or a restaurant, or selling liquors, or cigars, or clothes, he has only to pay the amount required by the law and go into the business. There is no need in such cases for notice or hearing. So, also, if taxes are imposed in the shape of licenses for privileges, such as those on foreign corporations for doing business in the State, or on domestic corporations for franchises, if the parties desire the privilege, they have only to pay the amount required. In such cases there is no necessity for notice or hearing. The amount of the tax would not be changed by it.

But where a tax is levied on property not specifically, but according to its value, to be ascertained by assessors appointed for that purpose upon such evidence as they may obtain, a different principle comes in. The officers in estimating the value act judicially ; and in most of the States provision is made for the correction of errors committed by them, through boards of revision or equalization, sitting at designated periods provided by law to hear complaints respecting the justice of the assessments. The law in prescribing the time when such complaints will be heard, gives all the notice required, and the proceeding by which the valuation is determined, though it may be followed, if the tax be not paid, by a sale of the delinquent's property, is due process of law.*

In some States, instead of a board of revision or equalization, the assessment may be revised by proceedings in the courts and be there corrected if erroneous, or set aside if invalid; or objections to the validity or amount of the assessment may be taken when the attempt is made to enforce it. In such cases all the opportunity is given to the tax-payer to be heard respecting the assessment which can be deemed es-

---

* That the duties of assessors in estimating the value of property for purposes of general taxation are judicial, see *Barhyte* v. *Shepherd*, 35 N. Y. 238, 250 ; *Hassan* v. *Rochester*, 67 id. 528, 536 ; *Stuart* v. *Palmer*, 74 id. 183 ; *Williams* v. *Weaver*, 75 id. 30, 33; Cooley, Law of Taxation, 266 ; Burroughs, Law of Taxation, sec. 102 ; *Jordan* v. *Hyatt*, 3 Barb. 275, 283 ; *Ireland* v. *Rochester*, 51 id. 416, 430, 431 ; *The State* v. *Jersey City*, 24 N. J. Law (4 Zabr.), 662, 666 ; *The State* v. *Morristown*, 34 N. J. Law (5 Vroom), id. 445 ; *Griffin* v. *Mixon*, 38 Miss. 424, 437, 438.

sential to render the proceedings due process of law. In *Davidson* v. *New Orleans* this court decided this precise point. In that case an assessment levied on certain real property in New Orleans for draining the swamps of that city was resisted on the ground that the proceeding deprived the owners of their property without due process of law, but the court refused to interfere, for the reason that the owners of the property had notice of the assessment and an opportunity to contest it in the courts. After stating that much misapprehension prevailed as to the meaning of the terms "due process of law," and that it would be difficult to give a definition that would be at once perspicuous and satisfactory, the court, speaking by Mr. Justice Miller, said that it would lay down the following proposition as applicable to the case, " That whenever by- the laws of a State, or by State authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole State or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." (96 U. S., 97.)

This decision covers the cases at bar. The assessment under consideration could, by the law of California, be enforced only by legal proceedings, and in them any defence going either to its validity or amount could be pleaded. In ordinary taxation assessments, if not altered by a board of revision or of equalization, stand good, and the tax levied may be collected by a sale of the delinquent's property; but assessments in California, for the purpose of reclaiming overflowed and swamp lands, can be enforced only by suits, and, of course, to their validity it is essential that notice be given to the tax-payer and opportunity be afforded him to be heard respecting the assessment. In them he may set forth, by way of defence, all his grievances. *Reclamation District No.* 108 v. *Evans*, 61 Cal. 104.

If property taken upon an assessment, which can only be enforced in this way, be not taken by due process of law, then, as said by Mr. Justice Miller, in the New Orleans case, these words as used in the Constitution, can have no definite meaning. The numerous decisions cited by counsel, some of which are given in the note, as to the necessity of notice and of an opportunity of being heard, are all satisfied where a hearing in court is thus allowed.\*

The objection that the law of California authorizing the assessment in question, impairs the obligation of a contract created between the United States and the State by the act of Congress of September 28th, 1850, commonly known as the Arkansas Swamp Act, is founded upon a misapprehension of its provisions. 9 Stat. 519, ch. 84 It is true the act granted to the State all the swamp and overflowed lands within its limits, on condition that the proceeds of the lands, " whether from sale or by direct appropriation in kind," should be applied, as far as necessary, in reclaiming the lands by means of levees and drains. Hence the contention of counsel is that the State is bound to carry out this condition, and apply the proceeds to the reclamation, or provide for their application to that end, and that its legislation imposing an assessment upon other lands to raise the necessary funds for that purpose, is in violation of this contract, and therefore void. The answer to this position is twofold. In the first place, if a contract was created by the Arkansas act, when the State accepted its benefits, it is for the United States to complain of the breach if there be any. The plaintiff is not a party to the contract, and is in no position to

---

\* *Overing* v. *Foote*, 65 N. Y., 263, 269 ; *Stuart* v. *Palmer*, 74 id. 183 ; Cooley, Law of Taxation, 265-6, 298 ; *Thomas* v. *Gain*, 35 Mich. 155, 164 ; *Jordan* v. *Hyatt*, 3 Barb., 275, 283 ; *Wheeler* v. *Mills*, 40 id. 644 ; *Ireland* v. *Rochester*, 51 id. 414, 430, 431 ; *The State* v. *Jersey City*, 24, N. J. L. 4 Zabr. 662, 666; *The State* v. *Newark*, 31, id. 360, 363; *The State* v. *Trenton*, 36 id. 499, 504; *The State* v. *Elizabeth*, 37 id. 357; *The State* v. *Plainfield*, 38 id. 97; *The State* v *Newark*, 1 Dutch. 399, 411, 426; *Patten* v. *Green*, 13 Cal. 325; *Mulligan* v. *Smith*, 59, id., 206; *Griffin* v. *Mixon*, 38 Miss. 424, 438; *County of San Mateo* v. *Southern Pacific R. R. Co.* 8 Sawyer, 238; *County of Santa Clara* v. *Same*, 9 id.; *Darling* v. *Gunn*, 50 Ill. 424. See also *Gatch* v. *City of Des Moines*, N. W. Rep. 310, 311, 313.

Opinion of the Court.

invoke its protection. But, in the second place, the appropriation of the proceeds rests solely in the good faith of the State. Its discretion in disposing of them is not controlled by that condition, as neither a contract nor a trust following the lands was thereby created. This was distinctly held after elaborate consideration in the recent case of *Mills County* v. *Railroad Companies,* 107 U. S. 557, 566.

There are several other objections urged upon our consideration in the elaborate brief of the appellant's counsel, but we do not deem it necessary to consider them, for they raise only questions of local law and procedure which have been considered and determined in the courts of the State, from whose conclusions we should not depart.

*Decrees affirmed.*

NOTE.

Legislation of the Colonies prior to the Revolution, and of the States since, giving to the tax-payer an opportunity to be heard respecting the justice of the assessment of his property before it becomes final.

In Massachusetts, an act passed in 1692, for defraying the public and necessary charges arising within each county of the province, provided that " If any person or persons think themselves overrated in any such assessment, they shall be eased by the assessors making the same to `appear, or, in default thereof, by the court of quarter sessions." (Laws of Massachusetts Bay, p. 19.)

In Connecticut, an act passed prior to 1750 made it the duty of the listers to hear complaints of parties complaining that they were overrated. " But if such listers will not give just relief, then upon application made by the aggrieved party to an assistant, or justice of the peace, with two of the selectmen of the town (notifying two or more of the listers to show reason, if any they have, why relief should not be granted them), they shall consider the case, and give such relief as they shall judge just and reasonable." (Acts and Laws of His Majesty's English Colony of Connecticut, 136 and 262.)

In South Carolina, by an act passed in 1701, for raising money for the public use and defence of the province, provision is made that the commissioners appointed by the act shall, upon complaint or appeal from any one feeling aggrieved at the rating, examine the person complaining upon his oath, touching the value of his real and personal estate, " and upon due examination abate or default proportionably the said assessments, and the same so abated shall be certified by the commissioners aforesaid, or any two of them, to the receiver, and such assessment so certified as aforesaid shall be deemed firme and valid, and to that end the commissioners are hereby required to meet together for the determining of such complaint and appeal accordingly." (2 Statutes of South Carolina, 184.)

By other and subsequent statutes the tax-payer was allowed to "swear off" so much as he should think himself overrated for his stocks or stores, and the assessors were required to give notice for that purpose, and were authorized to administer oaths and to allow the abatement. (3 Statutes of South Carolina, 241, 260, 476, and 506.)

In Maine and Massachusetts, the tax-payer may make his complaint first to the assessor, and, if he refuse to grant the relief demanded, to the county commissioners. (Me. Rev. Statutes, 1871, p. 144 ; Mass. General Statutes, 1860, p. 79.)

In Rhode Island he may petition the Supreme Court or Court of Common Pleas, and the court must hear and determine his complaint. (General Statutes, p. 107.)

In Vermont, complaints may be heard before listers, and an appeal lies from their decision to the selectmen of the town. (General Statutes, 520.)

In New Hampshire, the tax-payer may apply to the selectmen of the town, and, if dissatisfied with their decision, may apply, by petition, to the Supreme Court, in the county, at a trial term, which shall make such order thereon as justice requires. (General Statutes, 123.)

In Connecticut, a board of relief, to consist of five "judicious electors," is annually elected in each town, for hearing and determining appeals from decisions of the assessors. (General Statutes, pp. 24, 159.)

In New York, complaints may be made to the board of assessors. (Rev. Statutes, 5th Ed., 911 and 912.)

In New Jersey, to the commissioners of appeal, in tax cases. (Rev. Statutes, 1142, 1148.)

In Pennsylvania and Delaware, to county commissioners. (Penn., Purdon's Dig., p. 937, § 23; Del. Rev. Statutes, 1852, p. 62, §12.)

The Delaware Act of 1796 (2 Laws of Del., 1255, § 14), provided that commissioners should give notice in each hundred, and at the time and place specified meet and "hear and determine the complaints of any person or persons that may be aggrieved, and shall generally arrange the said valuations, so that no person or persons may be unequally or overrated; *provided always*, that no person or persons shall be prevented from appealing to the Levy Court and Court of Appeals of his or their respective county as heretofore."

In Virginia and Georgia, if the tax-payer and assessor cannot agree as to valuation, each can choose an arbitrator, and they an umpire, to whom the matter of disagreement is submitted for final determination. (Geo. Code, 1873, § 840; Va. Code, 1860, p. 201.)

In Maryland, North Carolina, Florida, and Alabama the boards of county commissioners constitute tribunals for hearing and determining complaints in regard to assessments ; except in Baltimore the board of control and review constitute such tribunal. (Md. Code, Sup., 1861–67, p. 279, § 175; N. C. Laws, 1874–5, p. 222, § 18; Thompson Dig. Laws of Florida, 97; Ala. Code of 1876.)

In North Carolina, under the Act of 1819, three freeholders, appointed by the Court of Common Pleas and Quarter Sessions, constitute a board of appeal for adjustment of assessments. (2 Laws of N. C., p. 1480, § 2.)

Opinion of the Court.

In Arkansas, Mississippi, and Kentucky, the county Boards of Supervisors constitute boards for the equalization of assessments. (Ark. Acts of Assembly, 1873, p. 58 ; Miss. Rev. Code, 1871, p. 351, § 1685 ; Ky. Gen'l Sts., 1873, p. 724.)

In South Carolina such a board is constituted of the county commissioner, auditor, and treasurer ; in Louisiana, of the county clerk, recorder and sheriff ; in Tennessee, of the assessor and two freeholders ; and in Missouri of the presiding judge of the county court and the county surveyor and assessor. (Rev. Sts. S. C., 69; Voorhies Rev. Sts. La., 840; 1 Sts. Tenn., § 581 Mo.; Mo. Rev. Stats., 2 vol., §§ 6719, 6720, 6726.)

In West Virginia, the aggrieved party may apply for relief to the county court with an appeal to the Circuit Court. (Rev. Sts., 1063.) In Texas he may apply to the county court, and its determinations are final. (Paschal's Dig., 869, Art. 5176.)

Boards of Equalization or Review are provided for, consisting :

In Illinois, of the assessor, clerk and supervisor. (Ill. Rev. Sts., 1874, p. 871.)

In Indiana, of the county auditor, commissioners, and appraisers. (1 Gavin & Hord's Stats. of Indiana, p. 82, § 54, 320.)

In Michigan, Iowa, and Nevada, of the boards of supervisors. (1 Compiled Laws of Mich., 366 ; Code of Iowa of 1873, p. 140 ; General Laws of Nev., § 3139.)

In California, of the boards of supervisors, except where the property assessed consists of the franchise, roadway, roadbed, rails, and rolling-stock of railroads operated in more than one county, in which case the State board of equalization acts as assessor, and over its decisions there is no revisory tribunal. (Political Code of Cal., §§ 3673, 3692.)

In Kansas and Nebraska, of county commissioners. (Kans. Comp. Laws, 1879, 953 ; Neb. Gen'l Sts., 907.)

In Ohio, of the county commissioners and county auditor, except in certain cities, where the board consists of the county auditor and persons appointed by the city authorities. (Rev. Sts., 1880, p. 731.)

In Oregon, of the county judge, assessor, and clerk. (Deady & Lane's Gen'l Laws of Oregon of 1874, 756.)

In Wisconsin, the chairman of the board of supervisors, clerk, and assessors of each town, and the mayor, clerk, and assessors of each city, and the president, clerk, and assessors of each incorporated village, constitute a board of review for such town, city, or village. (1 Taylor's Statutes, 1871, p. 406, § 53.)

The function of these boards of review, by whatever name called, is essentially the same.