614

SOUTHERN REALTY CORPORATION et al.
v. McCALLUM, Secretary of State, et al.

No. 381.

District Court, W. D. Texas, Austin Division.
Oct. 17, 1932.

Ben H. Powell, of Austin, Tex., McCormick, Bromberg, Leftwich & Carrington, of Dallas, Tex., Polk, Sansom & Terrell, of Fort Worth, Tex., and Rice, Hyman & Suggs, of Dallas, Tex., for plaintiffs.

James V. Allred, Atty. Gen., and F. O. McKinsey and Sidney Benbow, Asst. Attys. Gen., for defendants.

McMILLAN, District Judge.

Plaintiffs, comprising a large number of domestic and foreign corporations, seek by bill in equity to enjoin the enforcement of what is commonly known as the "Franchise Tax Law of the State of Texas." Acts Tex. 1930, 5th Called Sess., c. 68. While the act is assailed on constitutional grounds, the issuance of a preliminary injunction was not insisted on, the parties having by agreement provided for holding in suspense the taxes paid under protest. The matter has accordingly been submitted for final hearing in the District Court, without the necessity for the organization of a three-judge court. Counsel for defendants have conceded that the laws prior to 1930 have no application to the payments made and now held in suspense, nor is the amendment of 1931 (see Vernon's Ann. Civ. St. Tex. arts. 7084, 7089), pertinent, at this time, to the issue involved. Accordingly, the matter for consideration here is the validity of the 1930 Franchise Act.

This statute substantially provides that every domestic or foreign corporation chartered or authorized to do business in Texas shall, on or before May 1 of each year, pay in advance to the Secretary of State a franchise tax for the year following, based upon that proportion of the outstanding capital stock, surplus, and undivided profits, plus the amount of outstanding bonds, notes, and debentures, other than those maturing within less than a year from the date of issuance, as the gross receipts from its business done in Texas bears to the total gross receipts from its entire business. Where a foreign corporation, not theretofore doing business in Texas, applies for permit, the tax is not payable until the end of one year from the date of such permit, at which time the tax is computed according to the first year's business. The law contemplates the payment of the tax on the basis of a sworn report made by the corporation to the Secretary of State, between January 1 and March 1 of each year. Penalties for failure to make the report or pay the tax, of 10 per cent. and 25 per cent., respectively of the amount of the tax due, are denounced, as well as provision for forfeiture of the right to do business.

Complainants assail the 1930 act on a number of grounds, the principal ones being as follows:

First. That there is discrimination against domestic corporations on account of the fact that foreign corporations obtaining permits to do business in the state are not required to pay a franchise tax until the end of the first year, whereas the domestic corporations pay annually in advance.

Second. That the act is discriminatory, arbitrary, and unreasonable, and the tax exacted thereunder unequal and lacking in uniformity, for the reason that outstanding indebtedness, evidenced by bonds, debentures, or notes with maturities greater than one year, is considered as part of the capital funds of the corporation in determining the tax to be paid.

Third. That the act is unconstitutional by reason of its violation of the provisions of the State Constitution for uniform and equal taxation.

Fourth. That the act is void in that it attempts to tax liabilities incurred and outstanding beyond and outside the confines of the state.

Fifth. That the act constitutes a denial of due process in that: (a) The determination of surplus and undivided profits is a matter of uncertainty and opinion. (b) The portion of the gross receipts from the business done in Texas is uncertain. (c) No machinery is set up for the ascertainment of the truth or falsity of the reports made, which

fact operates to the detriment of honest taxpayers. (d) An absolute discretion is vested in the Secretary of State to determine the amounts due and to adjudicate the matter without notice and hearing and impose subsequent penalties in event of default. (e) Even if notice were given and hearing had, the statute makes no provision for appeal or judicial review. (f) Unless the tax is paid pursuant to notice provided for in May, heavy penalties, including forfeiture of right to do business, are incurred. (g) The act provides for no additional notice after that provided to be given in the month of May. (h) No relief is provided from penalties to be assessed, except by payment. (i) and (j) The penalties are excessive and such as to deter any effort to resist. (k) The tax being payable annually, it is really an ad valorem tax.

█ The foregoing constitute, as heretofore stated, the principal grounds on which the statute is assailed. At the outset, it is proper to say that the court approaches this matter upon the assumption that the statute should be sustained if it is possible to do so without clearly doing violence to the constitutional rights attaching to the complainants in the case. As said by the Supreme Court in Southwestern Oil Company v. Texas, 217 U. S. at page 119, 30 S. Ct. 496, 498, 54 L. Ed. 688, in discussing the application of the Fourteenth Amendment to a taxing statute: " * * * It was never contemplated, when the Amendment was adopted, to restrain or cripple the taxing power of the states, whatever the methods they devised for the purposes of taxation, unless those methods, by their necessary operation, were inconsistent with the fundamental principles embraced by the requirements of due process of law and the equal protection of the laws in respect of rights of property."

With this preliminary observation, the various points urged will now be considered, seriatim.

█ First. It is difficult to perceive any invalidity in the provision requiring foreign corporations to make payment after the transaction of the first year's business, instead of in advance. This appears on its face to be a reasonable classification. There is no other practicable or feasible way to determine the tax under the other provisions of the statute. The state is given a lien on all assets of the corporation within the state, to secure the tax. The losses that might be sustained on account of corporations which fail to remit the tax after the first year would be so negligible, in the court's opinion, as not to

warrant material consideration. Furthermore, the principle is well settled that some distinction and classification may be made by the states as between foreign and domestic corporations. See the Stiles Case, 242 U. S. at page 118, 37 S. Ct. 58, 61 L. Ed. 176. The classification is also probably warranted by the fact that a domestic corporation is authorized to take charter for a fifty-year period, whereas the permit granted a foreign corporation is very much more limited in time. Furthermore, the point would seem to be ruled against complainants by the decision of the Supreme Court in the Latrobe Case, 279 U. S. 421, 49 S. Ct. 377, 73 L. Ed. 776.

█ Second. This contention relates to the inclusion of outstanding long-time indebtedness as part of the capital structure of the corporation to be used as a factor in computing the tax to be paid. At the outset in this connection, it is necessary to say that, in the opinion of the court, the exaction is a privilege tax and not a property tax. Counsel for complainants virtually admitted that this was their opinion, when the case was orally argued before the bar. Without regard to that admission, however, the decisions of the Supreme Court of the United States appear to settle this beyond question. Accordingly, treating the exaction of the law as a privilege tax, it is valid "so long as it bears some real and reasonable relation to the privilege granted or to the protection of the interests of the State." See the Latrobe Case, 279 U. S. 421, 49 S. Ct. 377, 379, 73 L. Ed. 776, and the Emmerson Case, 258 U. S. 290, 42 S. Ct. 305, 66 L. Ed. 622.

It seems to be well settled that in assessing these franchise and privilege taxes it is proper to use capital stock as a means of measurement. In domestic corporations the entire authorized capital may be considered. In the case of foreign corporations, capital issued and outstanding has been used with approval. Furthermore, the Supreme Court has approved statutes providing not only for the use of the capital, but for the use of the surplus of the corporation. See the Middlekamp Case, 256 U. S. 226, 41 S. Ct. 489, 65 L. Ed. 905, and the Shartel Case, 279 U. S. at page 431, 49 S. Ct. 380, 73 L. Ed. 781. Accordingly, there seems to be no doubt as to the right of the state to use both the capital stock and the surplus as a basis on which to compute the tax, within proper limitations with regard to the amount of the capital and surplus devoted to the business of the corporation in that state.

The question of the right to go one step

further and include long-time indebtedness as a part of the capital structure for this purpose does not seem to have been directly passed on.

It is perfectly apparent, from the evidence, that the act of the state in including this long-time indebtedness was aimed at a condition which had arisen and which, in the opinion of the lawmaking body, merited consideration and correction. Corporations with a comparatively small capital stock were transacting large amounts of business in the state, using borrowed capital for that purpose, thereby escaping the privilege tax based on authorized or outstanding capital stock and admitted surplus. To all intents and purposes, the funds acquired in this way constituted a part of the capital structure of the corporation. It is to be presumed under the law that value was received by the corporation for these debentures when issued. It is probably true that in some instances this value was not completely received. It is also probably true that, having been received, it has in many instances fluctuated or to a certain extent disappeared. If this were a property tax, those are matters which might and should be considered.

The same argument has been made in many cases with regard to capital stock. "Par value and actual value of issued stock are not synonymous and there is often a wide disparity between them. Par value has long been a familiar basis of computing a franchise tax upon foreign corporations, and when otherwise unobjectionable has been repeatedly upheld by this Court." If this be true as to capital stock (and it is the statement of the Supreme Court in the Latrobe Case, supra), it would appear to be equally applicable to long-time indebtedness which is issued by a corporation as part of its capital structure. If the exaction were a property tax instead of a privilege tax, the objection that it sets up a conclusive presumption might be tenable.

Treating the tax as one for privilege, the question is: Does it bear some real and reasonable relation to the privilege granted? The evidence shows the evil which the state was endeavoring to correct. "There is nothing in the Constitution which requires the State to adopt the best possible system of taxation." The discretion as to the character of franchise tax to be imposed, in the absence of the violation of some constitutional right, lies with the Legislature and not with the courts.

It is manifest that a privilege tax based solely on authorized or issued capital stock and surplus can be and has been evaded; that a greater privilege than that paid for can be and has been exercised within the state by operating on borrowed capital in lieu of paid-in capital or accumulated surplus. So far as the privilege exercised is concerned, the result is the same. Yet so far as the tax imposed is concerned the result is materially different. Is the court to hold that the state is helpless in the premises and that this artificial difference in capital structure erects a constitutional barrier which cannot be surmounted? I think not. So long as the franchise tax bears some reasonable relation to the privilege exercised within the state it should be sustained. No rule for taxation can be laid down which operates without some inequality. If the capital represented by this long-time indebtedness is lost, the loss to that extent impairs the capital stock, and by reduction in that capital the matter may be properly adjusted. If the capital be so small that the loss wipes out the capital and surplus, if any, the corporation is insolvent and should be so treated. Accordingly, the legislative effort to prorate the amount of business transacted in the state to the total transacted and then relate that result to the total capital apparently employed would seem to have a reasonable relation to the privilege exercised in the state. The objection that the capital may in certain instances be more apparent than real is no more tenable than the same objection so often overruled by the Supreme Court with regard to impaired capital stock. The tax is on the privilege, not on the property.

While not directly in point, the case of Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892, is very persuasive in this connection. Without going into the matter of this point further, it is sufficient to say that the views expressed are sustained by the general doctrines announced by the Supreme Court of the United States in such late cases as Southwestern Oil Co. v. Texas, 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; Cheney Bros. Co. v. Massachusetts, 246 U. S. 147, 38 S. Ct. 295, 62 L. Ed. 632; Hump Hairpin Mfg. Co. v. Emmerson, 258 U. S. 290, 42 S. Ct. 305, 66 L. Ed. 622; Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495; New York v. Latrobe, 279 U. S. 421, 427, 49 S. Ct. 377, 73 L. Ed. 776, and International Shoe Co. v. Shartel, 279 U. S. 429, 49 S. Ct. 380, 73 L. Ed. 781.

The exception of short-time obligations is a reasonable classification, as they exclude the

618

idea of permanent capital, and the tax being annual it would be impracticable to keep account of short-time indebtedness.

■ Third. With regard to this point, namely, that the act violates the state constitutional requirement with regard to taxation being equal and uniform (article 8, §§ 1, 2), the finding that the tax levied is a franchise or privilege tax and not a property tax disposes of this contention.

■ Fourth. In regard to this point, namely, that the act is unconstitutional as taxing liabilities beyond the state, again it must be borne in mind that the tax is a privilege and not a property tax. The statute, as now drawn, is not open to the objection sustained in the Looney-Crane Case, 245 U. S. 178, 38 S. Ct. 85, 62 L. Ed. 230, nor does it fall under such decisions as the Air-Way Case, 266 U. S. 71, 45 S. Ct. 12, 69 L. Ed. 169. The tax is not a direct tax on the liabilities issued and authorized to be issued outside the state, but is a tax for the privilege of doing the local business transacted within the confines of the state. "A franchise tax imposed on a corporation, foreign or domestic, for the privilege of doing a local business, if apportioned to business done or property owned within the state, is not invalid under the commerce clause merely because a part of the property or capital included in computing the tax is used by it in interstate commerce." Shartel Case, 279 U. S. 433, 49 S. Ct. 380, 382, 73 L. Ed. 781.

The statute limits the tax to the privilege exercised within the state by providing for its computation "as the gross receipts from its business done in Texas bears to the total gross receipts." Section 2. This evidences bona fide attempt on the part of the taxing power to limit its exaction to the privilege exercised within the state. There are many decisions which hold that the mere fact that property used in interstate commerce lying outside of the state may be incidentally used as a basis of computation does not invalidate the taxing statute. As said by the Supreme Court in Kansas City, etc., v. Stiles, 242 U. S. at page 118, 37 S. Ct. 58, 61, 61 L. Ed. 176: " * * * Each case must depend upon its own circumstances, and that while the state could not tax property beyond its borders, it might measure a tax within its authority by capital stock which in part represented property without the taxing power of the state. As to the objection based upon the due process clause of the Constitution, we think that principle controlling here. There is no attempt in this case to levy a property tax; a franchise tax within the authority of the state is in part measured by the capital stock representing property owned in other states."

■ Fifth. The fifth point attacks the statute for want of due process on a number of grounds: (a) The matter of surplus is necessarily a matter of opinion, and the statute cannot be held void on that ground. All values are more or less a matter of opinion. The corporation makes its report as to its surplus, and in my judgment the reports as to the companies involved here could only be questioned in the manner hereinafter outlined. If the surplus is decreased it can certainly so report it, and if its stock is impaired it has its statutory method of reduction of capital stock.

■ (b) The claimed uncertainty as to the provision for report of gross receipts from Texas business should not be held to invalidate the statute. This should ordinarily simply be a matter of bookkeeping. In any event, many statutes have been before the appellate courts in which the amount of business done or property owned in the state were required to be reported, and in no instance of which the court has been advised have they been avoided on that ground.

■ (c) The contention that no machinery has been set up to ascertain the truth or falsity of the report, to the detriment of the honest taxpayer, does not present any constitutional objection to the statute. There is no allegation or showing that the parties to this case are in any way affected by that matter at this time. Furthermore, while it is apparently true, as alleged in plaintiffs' amended bill on pages 22 and 23, that the Secretary of State is guided, in computing the tax, by the reports made, still the law gives the Attorney General ample authority to proceed for the collection of any deficiency that may be due the state.

(d, e, f, g, h, i, j, and k). The want of due process charged by these various subdivisions, section VII of the amended bill, are cognate and will be considered together. They complain generally of alleged absolute discretion vested in the Secretary of State, of want of notice and hearing, and excessive penalties. They further complain that the action of the Secretary of State is not subject to judicial review. The matter with regard to any penalty in the case at bar might very well be held to be moot, inasmuch as the tax, computed on the reports made by the parties, has been paid and is being held in suspense, and the stipulations on file indicate that no penalties are being claimed or demanded. How-

ever, inasmuch as it might be very well held that the original payment was made under the duress of the penalties that might be imposed, it is proper to pass on these various matters urged in section VII.

No unbridled discretion is confided in the matter to the Secretary of State. With the exception of foreign corporations applying for initial permit, the act seems to contemplate that the tax shall be computed on the sworn reports made by the corporation. Complainants so allege in their amended bill in complaining that the act operates to the advantage of the dishonest taxpayer. See paragraph C, page 22. The state is protected in this matter by the authority given to the Attorney General to institute suits for the collection of any tax that may be due. In the event that course is pursued the defendant corporation would most certainly have its day in court.

That portion of the act which gives the Secretary of State authority to obtain and be guided by information "from other sources" now apparently relates only to corporations applying for charter or permit. All of the plaintiffs in the present case either have charters or have had permits to do business in Texas more than one year. It is fundamental, of course, that an act will not be held obnoxious to the Constitution on any ground not applicable to the complainant itself.

With regard to the matter of notice, the court is not of the opinion that the complainants are entitled to any further notice than that provided for in the act itself. Always approaching this case from the standpoint that this is a privilege and not a property tax, it is manifest that the procedure for determining and fixing the tax differs in this case from that ordinarily required in a property or ad valorem tax. This point is made clear by the decision in the case of Hagar v. Reclamation District, 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569. In this connection, also, see St. Louis-San Francisco Ry. v. Middlekamp, 256 U. S. at page 229, 41 S. Ct. 489, 65 L. Ed. 905. There, the complainants, after filing report as required by law, brought suit to restrain the collection of the franchise tax. The objection that the statute made no provision for notice or hearing was most strenuously urged. The court stated that, inasmuch as the complainant's figure had been accepted, the contest was on matters of law and it could see nothing of which complainants could complain in that respect. In the case at bar, no question has been raised by the defendants as to the amount of the tax paid.

It does not appear that the penalties provided for are so excessive as to deter contest of the statute, thereby coming under the rule announced in Ex parte Young, 209 U. S. 159, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764. There is no jail penalty denounced, and the filing and maintenance of the present suit negatives the idea that complainants are overawed by the statute to the extent that they are deprived of their constitutional right to contest it.

With regard to the contention that the statute is lacking in due process, in that it precludes any appeal to the courts, the authorities are against the complainants on that point. As heretofore said, the statute, as it stands by virtue of the 1930 amendment, seems to contemplate that the Secretary of State should compute the tax on the reports made, so far as corporations of complainants' class are concerned. If this be true, there is no discretion to be exercised, and her action in refusing to accept the tax or in threatening to assess the penalties can be controlled by mandamus or by an equity suit. Suits in equity involving the action of the Secretary of State with regard to the assessment and collection of franchise tax have been several times maintained in the state. See the Staples Case (Tex. Com. App.) 269 S. W. 420; McCallum v. Associated Retail Credit Men of Austin (Tex. Civ. App.) 26 S.W.(2d) 715. In one of these cases relief was granted and in the other, denied. In neither case is there any suggestion to the effect that suit could not be maintained.

It has long been the settled law that an action against an officer attempting to enforce an unconstitutional statute is not a suit against the state. Ex parte Young, supra. However, the principle is not confined to unconstitutional statutes. "A valid law may be wrongfully administered by officers of the State, and so as to make such administration an illegal burden and exaction upon the individual." In such event, the constitutionality of the statute, if that be conceded, will not avail to oust the federal court of jurisdiction. See the Greene Case, 244 U. S. at page 507, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88. Accordingly, it would appear that if the statute be valid on its face, the fact that the officer charged with the enforcement of it might be guilty of dereliction does not operate to render the statute unconstitutional. The unconstitutional action of the officer can be controlled by the courts.

Accordingly, it follows from what has been said that the act is not void for want of

due process. This conclusion is not based on the right that might exist to sue the officers collecting the tax, as the evidence indicates that they are without financial responsibility sufficient to respond, nor is it based upon the so-called suspense statute, for, while it might be and probably is true that this fund could be recovered by proper suit, the recovery would be without interest and would therefore not be a complete or adequate remedy, under the decisions of the Supreme Court of the United States. In view of the fact that the suspense statute fails, in the court's opinion, to furnish an adequate remedy at law, the matter has not been considered from the angle of the late decisions in the Matthews Case, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, and the Stratton Case, 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465.

Separate findings of fact and conclusions of law have been prepared and will be filed, in accordance with the amended Equity Rule 70½ (28 USCA § 723). Accordingly, the court does not consider it necessary in this opinion to go more at length into a statement of the facts adduced on the trial.

What has been said disposes of the various contentions urged by complainants. It accordingly follows that a decree should be prepared and entered, denying the relief sought by complainants, and containing such provisions and safeguards with regard to the funds on hand as the parties, subject to the approval of the court, may deem necessary and proper.