**STATE LIFE INS. CO. v. DANIEL et al.**

**No. 1359.**

District Court, W. D. Texas, Austin Division.

May 11, 1934.

1016

Charles F. Coffin, of Indianapolis, Ind., and Hart, Patterson & Hart, of Austin, Tex., for plaintiff.

James V. Allred, Atty. Gen. of Texas, and Sidney Benbow, Asst. Atty. Gen. of Texas, for defendants.

McMILLAN, District Judge.

In this case the plaintiff, the State Life Insurance Company, by amended original petition, complains of R. L. Daniel, acting as commissioner of insurance of the state of Texas, Charles Lockhart, acting as treasurer of the state of Texas, and James V. Allred, acting as Attorney General of the state of Texas. Plaintiff alleges that it is a life insurance corporation chartered under the laws of the state of Indiana, and a citizen of that state; that the defendants are, each and all of them, citizens of the state of Texas, and reside in Travis county in that state. Plaintiff sues for the purpose of recovering the sum of $5,450.87 which it, alleges it paid to the commissioner of insurance by reason of an illegal exaction made on it under the color of article 4769 of Vernon's Annotated Civil Statutes, Revision of 1925, providing, substantially, for the payment of an occupation tax equal to 3 per cent. of the gross premiums collected from the citizens of the state of Texas. It is further alleged that this money was paid under protest and that same has been and is now being held in a certain "suspense account" provided for by the laws of Texas, awaiting the determination of the title thereto as provided by said suspense statute.

At the threshhold the plaintiff is met by a plea in abatement which raises the question of the jurisdiction of this court to hear and determine the matter, and it is the matter of this preliminary plea to the jurisdiction which is now before the court for determination.

The point which the defendants rely on to sustain their contention is, that while the suit is nominally brought against them in their various capacities as officers of the state, the case is in truth and in fact one against the state of Texas itself; that while permission is given by the suspense statute, as will be hereinafter noted, to institute a suit of this character, the effect of the asserted fact that the suit is against the state is to confine the litigation to the state courts, this result necessarily following by reason of the fact that there is no diversity of citizenship if the state is really the party at interest.

It is apparent upon the face of the pleadings that the necessary jurisdictional amount is involved and that complete diversity of citizenship exists, unless the defendants' contention that the state is the real party defendant is correct. It is fundamental, of course, that the state cannot be sued without its consent. Even though its consent be given, no one ,disputes the proposition that it is not a citizen within the contemplation of the diversity of citizenship provision of the Judicial Code (section 24 [28 USCA § 41]). State of Minnesota v. Northern Securities Co., 194 U. S. 48, 24 S. Ct. 598, 48 L. Ed. 870; State Highway Commission of Wyoming v. Utah Construction Co., 278 U. S. 194, 49 S. Ct. 104, 73 L. Ed. 262; Utah Construction Company v. State Highway Commission (D. C.) 16 F.(2d) 322.

Accordingly, the matter hinges here upon the question as to whether this is in truth and in fact a suit against the state of Texas, or whether it is against officers of the state who have made an illegal exaction of the plaintiff under the color of their official positions.

To arrive at a proper determination of this matter consideration must be given not only to the general principles announced by the federal courts, but to the so-called suspense statutes of the state of Texas. As early as 1930, the Legislature of the state, by amendatory statute (Acts Tex. 1930, 5th Called Sess., c. 73, § 3), provided for the holding in suspense of any moneys paid under protest until the exact status of the same was determined. The statute was couched in very general terms, and questions early arose as to its sufficiency to accomplish the desired purpose. Thereafter, in 1931 (Vernon's

Ann. Civ. St. Tex. art. 4388), this statute was amended and amplified. The question as to its sufficiency still remaining, in 1933 a much more complete statute was passed, which became effective on June 7th of that year. This statute is covered by article 7057b, Vernon's Ann. Civ. St. Tex., and, so far as the same is pertinent to the matter at issue here, it is copied in the footnote.[1]

It will be observed from a casual reading of this act that the state, taking notice of the fact that taxpayers were being required by officers of the state to make payments which they believed to be unlawful, desired to effect an arrangement by which payments could be made without waiver, the right being accorded to institute suit within ninety days against the officer who made the collec-

---

[1] "Art. 7057b. Sec. 1. Any person, firm or corporation who may be required to pay to the head of any department of the State Government any occupation, gross receipt, franchise, license or other privilege tax or fee, and who believes or contends that the same is unlawful and that such public official is not lawfully entitled to demand or collect the same shall, nevertheless, be required to pay such amount as such public official charged with the collection thereof may deem to be due the State, and shall be entitled to accompany such payment with a written protest, setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized.

"Sec. 2. Upon the payment of such taxes or fees, accompanied by such written protest, the taxpayer shall have ninety (90) days from said date within which to file suit for the recovery thereof in any court of competent jurisdiction in Travis County, Texas, and none other. Such suit shall be brought against the public official charged with the duty of collecting such tax or fees, the State Treasurer and the Attorney General. The issues to be determined in such suit shall be only those arising out of the grounds or reasons set forth in such written protest as originally filed. The right of appeal shall exist as in other cases provided by law. Provided, however, where a class action is brought by any taxpayer all other taxpayers belonging to the class and represented in such class action who have properly protested as herein provided shall not be required to file separate suits but shall be entitled to and governed by the decision rendered in such class action.

"Sec. 3. It shall be the duty of such public official to transmit daily to the State Treasurer all money so received, with a detailed list of all those remitting same, and he shall inform the State Treasurer in writing that such money was paid under protest as hereinabove provided. A deposit receipt shall be issued by the Comptroller for the daily total of such remittances from each department; and the cashier of the Treasury Department shall keep a cash book to be called "Suspense Cash Book," in which to enter such deposit re-

ceipts. Upon the receipt of such money by the State Treasurer it shall be his duty and he is hereby required to immediately and forthwith place the same in State depositories bearing interest in the same manner as any other funds of the State required to be placed in such depositories at interest, and the State Treasurer shall further be required to allocate whatever interest is earned on such funds and to credit the amount thereof to such suspense account until the status of such money is finally determined as herein provided.

"Sec. 4. If suit is not brought within the time and within the manner herein provided, or in the event it finally be determined in such suit that the sums of money so paid or any portion thereof, together with the pro rata interest earned thereon, belong to the State, then and in that event it shall be the duty of the State Treasurer to transfer such money from the suspense account to the proper fund of the State by placing the portion thereof belonging to the State in such fund by the issuance of a deposit warrant. When such deposit warrant or warrants are issued, they shall be entered in the cash book, and the proper fund to which such money is so transferred shall be properly credited therewith. In the event, however, that suit is brought by such taxpayer within the time and within the manner hereinabove provided, and it be finally determined that such money so paid by such taxpayer, or any part thereof, was unlawfully demanded by such public official and that the same belongs to such taxpayer, then and in that event it shall be the duty of the State Treasurer to refund such amount, together with the pro rata interest earned thereon, to such taxpayer by the issuance of a refund warrant, the same to be issued in separate series and to be used for making such refunds, to be styled and designated 'Tax Refund Warrants' and such warrants shall be written and signed by the Comptroller and countersigned by the State Treasurer and charged against the suspense account, as hereinabove provided, and shall then be returned to the Comptroller and delivered by him to the persons entitled to receive the same."

tion and the Attorney General and the treasurer for the purpose of determining the validity of the exaction. Pendente the final adjudication of the matter, the fund is to be held in suspense by the state treasurer, and should it finally be determined that the money belongs to the state, it is to be covered into the state treasury, and should it finally be determined to belong to the taxpayer, it is to be returned to him with pro rata interest earned.

It will be noted that provision is made for suit in any court of competent jurisdiction in Travis county, Tex., the statute making no provision as to whether the court should be state or federal, as distinguished from statutes in which other states have required litigation of this kind to be brought only in the state courts.

Plaintiff in the present case has sought to avail itself of the provisions of this act by paying this occupation tax under protest and bringing this suit against the proper officers in Travis county, Tex., within the required ninety days. It has long been settled that suits against state officers attempting to enforce an unconstitutional statute or attempting to enforce a valid statute in an illegal manner are not suits against the state. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014; Ex parte Young, 209 U. S. 159, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Greene v. Louisville & Interurban R. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280. In cases in equity where relief has been asked against state officers under these circumstances, this rule has been uniformly applied by the federal courts.

Accordingly, in this case had the plaintiff elected to maintain a bill in equity against these state officers to enjoin the collection of this tax, the bill could not have been resisted upon the ground it was a suit against the state, and, if the allegations were otherwise sufficient, would have been maintainable, unless it could have been defeated by the provisions of this recent suspense statute. It is the opinion of the court that it was the obvious purpose of this statute to avoid equity jurisdiction in cases of this character and to provide for the aggrieved taxpayer an adequate remedy at law. Even prior to the passage of the act of 1933, the Attorney General's department, in the case of Southern Realty Corporation v. McCallum (D. C.) 1 F. Supp. 614; Id. (C. C. A.) 65 F.(2d) 934, which finally found its way to the Supreme Court of the United States (Southern Realty

Corporation v. Heath, 54 S. Ct. 127, 78 L. Ed. ——) contended that the earlier suspense statute constituted such adequate remedy at law as would defeat the right to appeal to a court of equity. This point was ruled against them by the lower court on the ground that the statute as it then existed was inadequate, particularly in view of the fact that it did not provide for a return of the money with interest. Southern Realty Corporation v. McCallum (D. C.) 1 F. Supp. 614. Had the statute provided an adequate remedy at law, it would have defeated the suit in equity, as is clearly shown by the decisions of the Supreme Court in the Matthews Case, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447, and the Stratton Case, 284 U. S. 530, 52 S. Ct. 222, 76 L. Ed. 465.

Now an adequate remedy at law within the purview of federal procedure not only means an adequate remedy in the state courts but an adequate remedy in the federal courts as well. Arrowsmith v. Gleason, 129 U. S. 86, 9 S. Ct. 237, 32 L. Ed. 630; Smyth v. Ames, 169 U. S. 466, 18 S. Ct. 418, 42 L. Ed. 819; Risty v. Chicago, Rock Island & Pacific R. R. Co., 270 U. S. 378, 46 S. Ct. 236, 70 L. Ed. 641; Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447; City Bank Co. v. Schnader, 291 U. S. 24, 54 S. Ct. 259, 78 L. Ed. ——. Accordingly, it is perfectly obvious that if the contention of the Attorney General in this case be correct, namely, that this is a suit against the state, and that while the state has by the suspense statute given permission to bring the suit, it can be maintained only in the state courts, the purpose of the statute has been defeated and an adequate remedy at law which would forestall the maintenance of an action in equity to restrain the collection of this tax has not been provided. The statute should be construed with a view to effecting the object of its enactment and it is manifest that to construe it as contended for by the defendants would be to defeat the legislative purpose.

In arriving at this conclusion the court has not overlooked the case of Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 920, 44 L. Ed. 1140, much relied on by defendants. That case, while similar in its subject-matter to the one at bar, is easily distinguished. There a California suspense statute was under consideration, and there the money exacted was at once paid into the state treasury and treated as the property of the state. It was mingled with other moneys owned by the state and claimed by the state, and the court, in passing upon the matter, held that despite

the fact that the action was against a state official the state was in truth and in fact the party at interest. However, in determining this point the court makes this very significant statement:

"This case is unlike those in which we have held that a suit would lie by one person against another person to recover possession of specific property, although the latter claimed that he was in possession as an officer of the state and not otherwise. In such a case, the settled doctrine of this court is that the question of possession does not cease to be a judicial question—as between the parties actually before the court—because the defendant asserts or suggests that the right of possession is in the state of which he is an officer or agent. Tindal v. Wesley, 167 U. S. 204, 221, 17 S. Ct. 770, 42 L. Ed. 137, 143, and authorities there cited. In the present case the action is not to recover specific moneys in the hands of the state treasurer, nor to compel him to perform a plain ministerial duty. It is to enforce the liability of the state to pay a certain amount of money on account of the payment of taxes alleged to have been wrongfully exacted by the state from the plaintiffs."

This statement by the court applies peculiarly to the Texas statute. Sections 3 and 4 of article 7057b evidence clearly the legislative intention that money paid by the taxpayer under protest shall be segregated and held as a fund apart until the title to it is determined. To hold otherwise would be to overlook such significant provisions as these:

"Upon the receipt of such money by the State Treasurer it shall be his duty and he is hereby required to immediately and forthwith place the same in State depositories bearing interest in the same manner as any other funds of the State required to be placed in such depositories at interest, and the State Treasurer shall further be required to allocate whatever interest is earned on such funds and to credit the amount thereof to such suspense account until the status of such money is finally determined as herein provided." Section 3.

"* * * Or in the event it finally be determined in such suit that the sums of money so paid or any portion thereof, together with the pro rata interest earned thereon, belong to the State, then and in that event it shall be the duty of the State Treasurer to transfer such money from the suspense account to the proper fund of the State by placing the portion thereof belonging to the State in such fund by the issuance of a deposit warrant. * * * In the event, however, that suit is brought by such taxpayer within the time and within the manner hereinabove provided, and it be finally determined that such money so paid by such taxpayer, or any part thereof, was unlawfully demanded by such public official and that the same belongs to such taxpayer, then and in that event it shall be the duty of the State Treasurer to refund such amount, together with the pro rata interest earned thereon. * * *" Section 4.

It is perfectly apparent in the light of the history of the statute and its wording that the present action is one to recover specific money, impounded by statute in the hands of state officers, alleged to have been illegally exacted, and which has not been commingled with the funds of the state and to which the state does not assert title other than as limited by the provisions of the suspense statute.

The very recent decision of the Supreme Court in City Bank Co. v. Schnader, 291 U. S. 28, 54 S. Ct. 259, 260, 78 L. Ed. ——, directly sustains the views which have been expressed. There, in discussing a somewhat different statute passed by the state of Pennsylvania relative to taxes paid under protest, the court says:

"It is conceded that neither the statutes of Pennsylvania nor the decisions of its courts permit an action at law for the recovery of a tax paid under protest. If that procedure were permissible in the state courts, the appellant could pursue the same remedy in a federal court; there being the requisite diversity of citizenship and amount in controversy. Matthews v. Rodgers, 284 U. S. 521, 52 S. Ct. 217, 76 L. Ed. 447."

It is the opinion of the court that the plea to the jurisdiction should be overruled.